[895 NYS2d 262]

In the Matter of JOHN M. IRWIN, Appellant, v ONONDAGA COUNTY RESOURCE RECOVERY AGENCY et al., Respondents. (Appeal No. 2.)

Fourth Department, February 11, 2010

## APPEARANCES OF COUNSEL

*Steven S. Landis, P.C.*, New York City (*Steven S. Landis* of counsel), for appellant.

*William J. Bulsiewicz*, North Syracuse, respondent pro se, and for Onondaga County Resource Recovery Agency and others, respondents.

## OPINION OF THE COURT

FAHEY, J.

The primary issue before us on this appeal is whether Supreme Court erred in denying petitioner's request pursuant to the Freedom of Information Law (FOIL) (Public Officers Law art 6) seeking, inter alia, to compel disclosure of all of the electronically stored photographs in the possession of respondent Onondaga County Resource Recovery Agency (OCRRA) that were available for use in any OCRRA publication, with the exception of those photographs depicting only OCRRA staff, and any "associated metadata" with respect to those photographs. We will provide an extensive definition of the term metadata later in this opinion.

We conclude that the court erred in denying the FOIL request with respect to the unpublished photographs in the possession of OCRRA with the exception of unpublished photographs depicting individuals other than petitioner or relating to active or ongoing law enforcement investigations. We also conclude that the court should have ordered OCRRA to disclose the "system" metadata associated with the photographs that OCRRA has already disclosed to petitioner, as well as the photographs that we have deemed subject to disclosure under FOIL. We thus conclude that the amended judgment should be modified accordingly.

I

On November 28, 2007, OCRRA, a public agency that handles solid waste and recycling for Onondaga County, sent an e-mail to individuals who subscribed to a "news-blasts" list that OCRRA used to publicize its activities. The e-mail contained a newsletter advising subscribers that the compost "season" at two of OCRRA's compost sites would be extended through December 1, 2007, and it was opened by 1,800 of the 2,607 subscribers on the "news-blasts" list. Featured on the newsletter was an image of petitioner engaged in what was, by all accounts, the process of emptying leaves from a bag at an OCRRA compost site. OCRRA's former Public Information Officer (PIO) stated that petitioner actually posed for that photograph, which was taken in the fall of 2005, and gave OCRRA his name at that time. Petitioner was not identified by name in the e-mail.

According to the PIO, on December 12, 2007, petitioner "demanded two free annual compost site access passes in exchange for the use of his picture" and "indicated that the 'problem [would] go away' if OCRRA provided him with free compost site passes for 2008 and 2009." In a subsequent letter to the PIO, petitioner acknowledged having suggested "that a [complimentary] compost pass would be an appropriate [quid pro quo] for the use of [his photograph], without prior notification or authorization, to advertise [OCRRA's] compost site," but he disagreed with the PIO's characterization of the discussions between the PIO and petitioner concerning the subject compost passes. An OCRRA "Compost Season Pass Order & Authorization Form" signed by petitioner indicated that OCRRA sold season passes for $10.

## II

Given its reluctance to begin a practice of paying for the use of images in its newsletter and other educational publications, OCRRA refused to provide petitioner with any complimentary compost passes. On December 17, 2007, petitioner, who taught computer systems engineering courses for 15 years as an adjunct associate professor at Syracuse University, made a FOIL request to OCRRA seeking, inter alia, "[a]ny and all records involving [his] photograph that was used in the . . . e-mail . . . , including the image file itself and any associated metadata," and "[r]ecords of [photographs] in OCRRA's storage system that are available for use in any OCRRA publications, including [Web site] and e-mail activities." With respect to the second aforementioned request, petitioner stated that "[r]ecords are to specifically include [photographs] on the 'Shared Drive,' " and that "[photographs] depicting only OCRRA employees or staff can be excluded." Moreover, petitioner subsequently amended his request for records of photographs to encompass " '[a]ll computer records that are associated with published [photographs] in all OCRRA publications, including [Web site] and e-mail activities, for the years 2005, 2006, and 2007,' " while again excluding " '[photographs] depicting only OCRRA employees or staff.' " At the time of the FOIL request, there were at least 28,900 photographs on OCRRA's computer system.

In response to the FOIL request, OCRRA provided petitioner with digital copies of 1,423 photographs that had already been published, as well as two photographs of petitioner. OCRRA denied petitioner's request with respect to the remaining photographs in OCRRA's files on the grounds that the request was overbroad and constituted an unwarranted invasion of the personal privacy of the individuals depicted in the unpublished photographs. According to petitioner, the photographs that were produced had been reduced in quality and resolution and were bereft of metadata.

Petitioner thereafter commenced this CPLR article 78 proceeding seeking, inter alia, to annul the determination of OCRRA denying certain parts of his FOIL request. The court denied the petition with the exception of "the disclosure of photographs taken by Onondaga County Special Deputy Sheriffs assigned to work with OCRRA, which relate to former, closed or inactive law enforcement investigations, if they have not been previously provided."

### III

Addressing first petitioner's FOIL request concerning photographs, we conclude that the court erred in denying that part of the request seeking unpublished photographs that do not depict individuals.

The records of a public agency, including photographs, are presumptively open to public disclosure, without regard to the purpose of the request for disclosure (*see Matter of Beechwood Restorative Care Ctr. v Signor*, 5 NY3d 435, 440 [2005]; *Matter of Buffalo News v Buffalo Enter. Dev. Corp.*, 84 NY2d 488, 492 [1994]). A request for disclosure should not be denied merely because the request is voluminous (*see Matter of Konigsberg v Coughlin*, 68 NY2d 245, 249 [1986]), or because the requested records were not actually used in the agency's decision-making process (*see Matter of M. Farbman & Sons v New York City Health & Hosps. Corp.*, 62 NY2d 75, 80 [1984]; *see generally Matter of Daily Gazette Co. v City of Schenectady*, 93 NY2d 145, 156 [1999]). A FOIL request, however, must "reasonably describe[ ]" the record requested (Public Officers Law § 89 [3] [a]), to enable the agency to identify and produce the record (*see Konigsberg*, 68 NY2d at 249; *M. Farbman & Sons*, 62 NY2d at 82-83). We agree with petitioner that he reasonably described the photographs he sought in his FOIL request.

██ We further conclude, however, that respondents met their burden of establishing that the unpublished photographs of individuals other than petitioner and those relating to active or ongoing law enforcement investigations were exempt from disclosure pursuant to Public Officers Law § 87 (2) (b), which authorizes the agency to deny disclosure of records if such disclosure "would constitute an unwarranted invasion of personal privacy."

Weighing the public's interest in the photographs requested against the privacy interests of the individuals depicted (*see Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 485 [2005]; *Matter of Edwards v New York State Police*, 44 AD3d 1216 [2007]; *Matter of Hawley v Village of Penn Yan*, 35 AD3d 1270, 1271 [2006], *amended on rearg* 38 AD3d 1371 [2007]), we conclude that the court properly denied disclosure of the unpublished photographs of individuals other than petitioner and the unpublished photographs relating to active or ongoing law enforcement investigations. The record establishes that the individuals photographed by OCRRA consented to its use of their photographs only for public education purposes.

Disclosure to outside parties for undisclosed reasons does not fall within that purpose and thus infringes upon the privacy of the individuals depicted. Further, photographs relating to active or ongoing law enforcement investigations are by their nature private. The record does not support the theory that there is a public interest in disclosure of either the unpublished photographs of individuals other than petitioner or the unpublished photographs relating to active or ongoing law enforcement investigations.

In view of our determination concerning the above-mentioned unpublished photographs, we need not address the contention of petitioner that the court erred in denying his request for an in camera review of the photographs or, alternatively, for a log identifying each such photograph. We note that petitioner's request appears to be intended to enable the court to determine which of the withheld photographs fall within the scope of the exemption for personal privacy asserted by OCRRA. Inasmuch as we have determined which of the disputed photographs are subject to disclosure under FOIL, there is no need for an in camera review or a log of the photographs at this juncture (*see generally Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 275 [1996])

## IV

Turning next to petitioner's FOIL request for the disclosure of metadata associated with the subject photographs, we conclude that the court should have ordered respondents to disclose the metadata associated with those photographs that OCRRA has already disclosed to petitioner, as well as those photographs that we have deemed subject to disclosure under FOIL. We note that, although the FOIL request could have been phrased more precisely, it is our view that petitioner's request for " '[a]ll computer records that are associated with published [photographs] in all OCRRA publications . . . for the years 2005, 2006, and 2007' " included a demand for the metadata associated with those images. We are also careful to note, however, that *our decision is limited to the facts of this case in this evolving area of the law.* The issue of whether metadata is subject to disclosure has been broached in a number of other jurisdictions, and we consider informative but not dispositive the decision of the Supreme Court of Arizona in *Lake v City of Phoenix* (222 Ariz 547, 218 P3d 1004 [2009]).

Nearly "every electronic document contains metadata" (Simon, E-Discovery, *Coming to Terms with Metadata*, NYLJ, Oct.

27, 2008, at S2, col 2). As earlier referenced, we now set forth a detailed definition of the term metadata for those lacking familiarity with the term. Metadata is "secondary information" not apparent on the face of the document "that describes an electronic document's characteristics, origins, and usage" (Spiro and Mogul, Expert Analysis, Southern District Civil Practice Roundup, *"The New Black": Meditations on Metadata*, NYLJ, Feb. 5, 2009, at 3, col 1).

> "Some examples of metadata for electronic documents include: a file's name, a file's location (e.g., directory structure or pathname), file format or file type, file size, file dates (e.g., creation date, date of last data modification, date of last data access, and date of last metadata modification), and file permissions (e.g., who can read the data, who can write to it, who can run it). Some metadata, such as file dates and sizes, can easily be seen by users; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept. Most metadata is generally not visible when a document is printed or when the document is converted to an image file. Metadata can be altered intentionally or inadvertently and can be extracted when native files are converted to image files. Sometimes the metadata can be inaccurate, as when a form document reflects the author as the person who created the template but who did not draft the document. In addition, metadata can come from a variety of sources; it can be created automatically by a computer, supplied by a user, or inferred through a relationship to another document" (Berman and Beerman, New York State E-Discovery Law, *On "Metadata," Instant Messaging, and Bates Stamping*, NYLJ, Aug. 31, 2007, at 3, col 1).

There are three types of metadata, each of which is of a different nature and is described as follows:

> "Substantive Metadata
>
> "Substantive metadata, or application metadata, is information created by the software used to create the document, reflecting editing changes or comments, and instructions concerning fonts and spacing. 'Substantive metadata is embedded in the docu-

ment it describes and remains with the document when it is moved or copied.' Such information is useful in showing the genesis of a particular document and the history of proposed revisions or changes . . .

"System Metadata

"System metadata reflects automatically generated information about the creation or revision of a document, such as the document's author, or the date and time of its creation or modification. System metadata is not necessarily embedded in the document, but can be obtained from the operating system or information management system on which the document was created . . . [S]ystem metadata is most relevant if a document's authenticity is at issue, or there are questions as to who received a document or when it was received.

"Embedded Metadata

"Embedded metadata is data that is inputted into a file by its creators or users, but that cannot be seen in the document's display. Common types of embedded metadata include the formulas used to create spreadsheets, hidden columns, references, fields, or internally or externally linked files. Embedded metadata is often critical to understanding complex spreadsheets which lack an explanation of the formulas underlying the output in each cell.

"The two most common ways of producing metadata for ESI [electronically stored information] are to produce documents (i) in a TIFF or pdf format with an accompanying 'load file' or (ii) in 'native format' " (Spiro and Mogul, NYLJ, Feb. 5, 2009, at 3, col 1; *see Aguilar v Immigration & Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 FRD 350, 354-355 [SD NY 2008]).

The production of a hard copy of a document (i.e., one in paper form) or the production of a document electronically but in what is basically a "picture" or "static" form, such as a portable document file (pdf) or tagged image file format (tiff), limits the information provided "to the actual text or superficial content of the document" (Spiro and Mogul, NYLJ, Feb. 5, 2009, at 3, col 1; *see also Aguilar*, 255 FRD at 353 n 3). Only when an

electronic document is produced in its "native" form can metadata be disclosed.

The metadata at issue in this case includes file names and extensions, sizes, creation dates and latest modification dates of digitally-stored photographs, and thus it appears to be of the "system" variety. Records stored in an electronic format are subject to FOIL (*see generally Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 464 [2007]). We are therefore constrained to conclude that the subject "system" metadata, which is at its core the electronic equivalent of notes on a file folder indicating when the documents stored therein were created or filed, constitutes a "record" subject to disclosure under FOIL (*see* Public Officers Law § 86 [4]). We do, however, reach the issue whether metadata of any other nature, including "substantive" and "embedded" metadata, is subject to disclosure under FOIL. Moreover, we do not address the issue concerning whether and when metadata of any nature is subject to disclosure under the CPLR.

### V

Accordingly, we conclude that the amended judgment should be modified by granting those parts of the petition seeking to compel disclosure of unpublished photographs in the possession of OCRRA with the exception of unpublished photographs depicting individuals other than petitioner or relating to active or ongoing law enforcement investigations and seeking to compel disclosure of the system metadata associated with those photographs that have been disclosed or are subject to disclosure. We direct respondent Executive Director of OCRRA to provide to petitioner forthwith those photographs that are subject to disclosure and the system metadata associated with those photographs that have been disclosed or are subject to disclosure.

GORSKI, J. (dissenting in part). We respectfully dissent in part. In our view, respondent Onondaga County Resource Recovery Agency (OCRRA) failed to meet its burden of establishing that disclosure of the unpublished photographs of individuals other than petitioner would constitute an unwarranted invasion of personal privacy (*see* Public Officers Law § 87 [2] [b]; § 89 [2] [b]; *Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462 [2007]). Disclosure "exemptions are to be narrowly interpreted so that the public is granted maximum access to the records of government" (*Data Tree,*

*LLC*, 9 NY3d at 462). Petitioner requested those photographs "available for use in any OCRRA publications." The majority concludes that the subjects of those photographs gave only a limited consent to the use of their likeness for the purpose of public education. However, the public education purpose for which the subjects allowed their photographs to be taken was for *use in OCRRA's publications*. We therefore conclude that OCRRA failed to establish that "the material requested falls squarely within the ambit of [the personal privacy] statutory exemption[ ]" (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979]; *see* Public Officers Law § 87 [2] [b]; § 89 [2] [b]), inasmuch as those subjects "understood or reasonably should have understood[ ] that [their likenesses] were destined for public disclosure" (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 488 [2005]). We therefore would further modify the amended judgment by granting those parts of the petition seeking to compel disclosure of unpublished photographs of individuals other than petitioner and the "system" metadata associated with those photographs, as described by the majority. We would further direct respondent Executive Director of OCRRA to provide to petitioner those photographs and the system metadata associated with them.

Finally, we note that the majority impliedly questions the motives of petitioner in requesting the photographs and metadata at issue, as do we, but we agree with the majority that motive is not a relevant factor in evaluating such a request (*see Matter of Buffalo News v Buffalo Enter. Dev. Corp.*, 84 NY2d 488, 492 [1994]).

SCUDDER, P.J., and CENTRA, J., concur with FAHEY, J.; GREEN and GORSKI, JJ., dissent in part in a separate opinion by GORSKI, J.

It is hereby ordered that the amended judgment so appealed from is modified, on the law, by granting those parts of the petition seeking to compel disclosure of unpublished photographs in the possession of respondent Onondaga County Resource Recovery Agency with the exception of unpublished photographs depicting individuals other than petitioner or relating to active or ongoing law enforcement investigations and seeking to compel disclosure of the system metadata associated with those photographs that have been disclosed or are subject to disclosure and as modified the amended judgment is affirmed, without costs, and respondent Executive Director of Onondaga County Resource Recovery

Agency is directed to provide to petitioner forthwith those photographs that are subject to disclosure and the system metadata associated with those photographs that have been disclosed or are subject to disclosure.