**PAINT TOWNSHIP, Appellant,**

v.

**Robert L. CLARK.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2014.
Decided Feb. 5, 2015.

---

William E. Hager, III, and Stephanie R. Hager, New Bethlehem, for appellant.

Robert L. Clark, pro se.

Craig J. Staudenmaier, Harrisburg, for amicus curiae Pennsylvania Freedom of Information Coalition.

BEFORE: BERNARD L. McGINLEY, Judge, and PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.[1]

In this Right–to–Know Law (RTKL)[2] case, Paint Township (Township) appeals from the October 21, 2013 order of the Court of Common Pleas of Clarion County (trial court) directing the Township to retrieve data from the then publicly-funded cell phone of Randy Vossburg, the chairman of the Township's Board of Supervisors (Supervisor Vossburg), and provide the retrieved records to Robert L. Clark (Requester). The trial court also ordered the Township to provide Requester with phone records concerning Township business after Supervisor Vossburg's publicly-funded cell phone number was privatized and paid for in part by the Township. We affirm in part and vacate and remand in part.

### Facts and Procedural History

On November 28, 2012, Requester, the chairman of the Township's Board of Auditors, submitted a RTKL request and sought the following records:

[The] Township's cell phone contract with Verizon Wireless including any service or equipment changes to the contract.

The name of the Township official or employee · authorizing each contract change.

Detailed phone bills for Township cell phones including the date, time, source, destination and duration (or size) of all incoming or outgoing voice, text, picture, and video messages.

The content of all incoming or outgoing text, picture, or video messages.

The content of application related data stored on the cell phone or available from Verizon Wireless, including browser history, address books, and Internet

connection logs for the phone assigned [to Supervisor Vossburg].

(Reproduced Record (R.R.) at 13a.)

The Township's open records officer, Jacqui Blose (Blose), responded on December 3, 2012, and requested a thirty-day extension. Blose did not respond within the thirty-day period, and Requester's request was deemed denied. Requester then appealed the denial to the Office of Open Records (OOR).

Before the OOR, the Township provided an unsworn position statement, alleging that the Township could not obtain any responsive records from Verizon Wireless and that Supervisor Vossburg's cell phone was privatized prior to Requester's request. · The Township also stated that it would submit a signed affidavit that the requested records do not exist in its possession or control. Ultimately, the OOR found the Township's evidence insufficient to establish that responsive records do not exist and granted Requester's appeal on February 4, 2013. (R.R. at 28a–32a.)

The Township then appealed to the trial court, alleging that it ceased providing a publicly-funded cell phone to Supervisor Vossburg in August/September 2012, at which point he entered into a private contract with Verizon Wireless. The Township also argued that cell phone records were not in its possession and/or do not exist. (R.R. at 1a–10a; R.R. at 65a–70a.)

In turn, Requester asserted that the Township did not conduct a good faith effort to determine whether the requested records existed, whether they were public records, or whether they were in its possession, custody, or control. (R.R. at 74a.)

On June 7, 2013, the trial court entered the following order:

---

1. This opinion was reassigned to the author on October 29, 2014.

2. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

1. [The] Township shall not sell or dispose of any of its cell phones until [the] court enters a final Order in this appeal.

2. Within thirty (30) days from today, [the] Township shall provide copies of the following records to [Requester] covering the period January 1, 2012 through November 28, 2012:

a. The Township's cell phone contract with Verizon Wireless including any service or equipment changes to the contract.

b. The name of the Township official or employee authorizing each contract change.

c. Detailed phone bills for Township cell phones including the date, time, source, destination and duration of all incoming and outgoing voice, text, picture, and video messages and, except for communications between the Supervisors themselves, the Township shall redact all information which identifies the other parties and their phone numbers.

d. The content of all incoming and outgoing text, picture, or video messages which relate to the business of the Township. The Township is not required to provide the content of communications which do not relate to Township business.

e. The content of all application related data stored on the cell phone or available from Verizon Wireless, including browser history, address books, and internet connection logs for the phone assigned [to Supervisor Vossburg], except the Township shall redact any information that would identify other parties. If the Township cannot obtain records, it shall file an appropriate affidavit or otherwise comply with [the] requirements of the [RTKL].

(R.R. at 163a–64a.)

In response, Blose submitted a notarized affidavit, under the penalty of perjury, dated July 8, 2013. In this affidavit, Blose attested that information and application-related data for Supervisor Vossburg's publicly-funded cell phone, including browser history, address books, and internet connection logs, could not be obtained from Verizon Wireless and do not exist in the custody, possession, or control of the Township. Blose further stated that the contract with Verizon Wireless was not available but was previously provided to Requester. (R.R. at 173a.)

On July 15, 2013, Requester petitioned to have the Township held in contempt for failing to comply with the June 7, 2013 order. Requester alleged that the Township willfully refused to abide by the June 7, 2013 order, acted in bad faith, and did not comply with the order in that it did not provide him with a copy of its cell phone contract with Verizon Wireless. Requester also alleged that the phone bills provided by the Township listed only voice messages and not details for text, picture, and video messages; the Township did not provide him with the content of text, picture, and video messages; and the Township redacted portions of records in an arbitrary manner. In addition, Requester asserted that the Township failed to provide him with data stored on Supervisor Vossburg's cell phone when it was publicly-funded and did not produce any records after the contract for that number was privatized in Supervisor Vossburg's name, even though the Township continued to finance the new phone with public funds. (R.R. at 165a–67a.)

The trial court convened a hearing on September 17, 2013. Requester asserted that he had not received a copy of the cell phone contract between the Township and Verizon Wireless as specified in the June 7, 2013 order and that the Township did not have adequate justification for its re-

dacted information. Requester further stated that the Township failed to comply with paragraph 2(d) of the June 7, 2013 order because the Township's delay in responding to the request resulted in the information no longer being available from Verizon Wireless. In addition, Requester argued that the Township failed to comply with paragraph 2(e) of the order because it did not attempt to retrieve requested information from the phone itself when Verizon Wireless' affidavit stated that it did not have the records. Finally, Requester claimed that the Township failed to provide him with any records from Supervisor Vossburg's publically-funded or private cell phone. (R.R. at 224a–41a.)

Blose testified that the Township provided Requester with access to all the records it received from Verizon Wireless; Requester refused copies of the records; and Requester was previously provided with the contract between the Township and Verizon Wireless. (R.R. at 281a–82a, 290a.)

Blose further testified that at a meeting on September 12, 2012, the Township's Board of Supervisors officially voted to terminate the Township's contract with Verizon Wireless for Supervisor Vossburg's publicly-funded cell phone and contemplated selling the phone for cost saving measures. Blose stated that during or shortly after this meeting (which was approximately two and one-half months **before** Requester submitted his request), Supervisor Vossburg said that he deleted the data and all information on the publicly-funded phone and reset the phone to the factory settings. According to Blose, Supervisor Vossburg's deletion of the information on the phone was done in accordance with the Board of Supervisors' concern for the privacy rights of others, namely the payroll, personnel, and health

records of its employees and/or staff. Specifically, Blose testified as follows:

> . . . [W]e did ask [Supervisor] Vossburg as to whether any records were contained on that phone, and he stated to the Township at the meeting, when we discussed selling the phone, that the phone had been reset and all the—had been reset to the factory settings and all applicable records had been deleted from the phone prior to him turning it back over to the Township, **because we were concerned that—there are certain duties that the Township has to protect the privacy of others under the Open Records Act and other things, payroll, personnel, health records, things like that and we were concerned that if we disposed of the phone, we may also dispose of their records.**

(R.R. at 259a) (emphasis added). Blose stated that she accepted Supervisor Vossburg's statements concerning the data having been deleted as true, "because he's the only one that knows how [the phone] works," and, as a result, no one has since verified whether the cell phone contains any e-mails or other information. (R.R. at 258a–59a.)

In addition, Blose testified that after Supervisor Vossburg deleted and reset the cell phone, he delivered the phone to the Township in its original box, and the phone is currently locked in the Township's fireproof safe. Blose added that Supervisor Vossburg later privatized the designated phone number in late August or early September 2012, through and with the purchase of a new phone, and the Township pays him a monthly reimbursement instead of completely funding a public cell phone. (R.R. at 258a–64a.)

According to Blose, Requester attended the September 12, 2012 meeting, and a letter demonstrates that it was Requester

who initially recommended, as one of several options, that the phone be privatized and the Township pay Supervisor Vossburg a monthly reimbursement rate. Finally, Blose confirmed that Verizon Wireless submitted an affidavit stating that no data was available for Supervisor Vossburg's publicly-funded phone after August 30, 2012. (*Id.*) [3]

By order dated October 21, 2013, the trial court denied Requester's petition for contempt. Regarding Requester's petition for an order directing the Township to comply with the June 7, 2013 order, the trial court directed the Township to:

1. **Retrieve the data** from [Supervisor Vossburg's publicly-funded] cell phone that is being held by the Township and **redact information** pursuant to the June 7, 2013 Court Order and provide the records to [Requester], and

2. Provide redacted phone records for [Supervisor Vossburg's phone number] after the time the number was transferred to [him privately], but only for calls among the Supervisors dealing with Township business.

The parties must follow the [RTKL] and any applicable regulations regarding release of the information and assessment and payment of the costs.

(R.R. at 342a) (emphasis added).

In its accompanying opinion, the trial court found, in pertinent part, that the Township did not act in bad faith because the affidavits from a Verizon Wireless agent confirm that Verizon Wireless possessed no data, files, or information for Supervisor Vossburg's publicly-funded cell phone and that substantive data, such as message, picture, or video content, is erased after three to five business days. (R.R. at 334a–37a.) Further, after recounting Blose's testimony that the publicly-funded cell phone was deleted and reset, the trial court determined that **"the Township reasonably believed the cell phone contained no data or information which could be provided pursuant to the court's [o]rder. The Township did not willfully violate the [o]rder or act in bad faith."** (R.R. at 338a) (emphasis added).

The trial court also quoted a previous decision by the OOR discussing "metadata," [4] and then stated that for purposes of

---

3. Requester stated that he was present at the September 12, 2012 meeting, but denied that he suggested that the phone be privatized. Requester said that he, in fact, opposed the notion of privatizing the phone. In support of his contention, Requester said that he had a copy of the letter referred to by Blose; however, it is unclear whether the letter was received into evidence and it is not part of the reproduced record. (R.R. at 265a.)

4. The trial court commented:

*In re Dorthey [Dorothy] Davis [v. Upper St. Clair Township]* [OOR, Docket No.: AP 2011–0800, 2011 WL 3622356, filed August 10, 2011], is an [OOR] decision from 2011 that discusses the role in which metadata plays in a record request.

"Metadata is electronic information which describes the history and characteristics of the electronic records." *Halfway there: Beyond the Basics of Electron-*

*ic Data Discovery*, PBI No. 2011–6625; *see also* The Sedona Conference Glossary: E–Discovery & Digital Information Management (3d ed. Sept. 2010); The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Productions, cmt 12a (2d ed. June 2007); National Information Standards Organization, Understanding Metadata (NISO Press 2004).... Metadata is generally not visible when the document is printed—it can be seen when a digital document is viewed in its native format using the program that originally produced the document. Jay E. Grenig & William Geisner III, *eDiscovery & Digital Evidence* (Oct. 2010). At least one federal district court has defined "metadata" as information describing the history, tracking, or management of an electronic document. *Williams v. Sprint*, 230 F.R.D. [640] 650 (D.Kan.2005). In the

the RTKL, "metadata" is a record that can be accessed if requested. However, the trial court found that Requester did not specifically and unequivocally seek metadata in his request.   (R.R. at 338–39a.)

The trial court otherwise concluded:

However, that does not mean [that Requester] cannot access the phone itself if he wishes.   The [o]rder calls for the content of all application related data stored on the cell phone.   That [o]rder must be complied with even if it means opening up the safe in the Township office and using a program or other technical device to remove the data from the cellphone itself.

\*     \*     \*

Just because something is deleted on a cellular phone does not mean it actually is permanently gone, and it is most certainly true that absent a professional deletion by a digital forensic analyst, there is still data on the phone.

(R.R. at 338a–39a.)

Finally, the trial court, although finding that the Township acted in good faith, determined that Supervisor Vossburg's cell phone records, after he personally assumed the phone number, were public records created by a public official to the extent that they documented Township business.   (R.R. at 340a.)

Pursuant to the trial court's directive, the Township filed a Pa.R.A.P. 1925(b) statement, and the trial court issued a Pa.R.A.P. 1925(a) opinion.   In response to the Township's argument that the trial court erred in requiring it to retrieve a record that does not exist, the trial court opined:

There are two ways to address this issue of the cell phone's reset data, that is, the issue of whether or not a record exists. The first is that the only conclusive proof regarding the contents of the cell phone is the testimony of [Blose] that the phone has been "reset."   No technical information was provided to the court, nor has her testimony conclusively demonstrated that information has actually been cleared.   [Blose] has not seen the phone.   Only Supervisor Vossburg handled the phone.   It is true that [Blose] testified under oath about the contents of the phone, but that testimony only covered what [Supervisor Vossburg] told her was deleted.   The court does not mean to question [Blose's] motivations and believes she testified truthfully about what the Supervisor told her. However, such testimony is unconvincing when it does not receive support from other sources.

A better argument is that while the data has been deleted, such information has not disappeared and must reside on the phone in some form.   Computer forensics is a cottage industry in the United States.   A basic tenant [sic] of that industry is that deleted, or in our case "reset," information is not actually deleted.   Retrieving deleted information takes little time.

(Trial court op. at 2–3.)

The trial court then discussed a news article on cyberforensic law enforcement to support the proposition that information/data erased, deleted, and wiped clean

context of disputes concerning access to records, some state courts have held that metadata is an integral part an electronic record and subject to disclosure.   *Lake v. City of Phoenix* [222 Ariz. 547], 218 P.3d 1004 (Ariz.2009); *O'Neill v. City of Shore-* *line,* 170 Wash.2d 138 [240 P.3d 1149] (Wash.2010); *Irwin v. Onondaga County* [72 A.D.3d 314], 895 N.Y.S.2d 262 (N.Y.App.Div.2010).
(R.R. at 338a–39a) (quoting *In re Dorothy Davis,* Final Determination at 4–5).

from a cell phone can still be retrieved by computer professionals. The trial court used this article to support its conclusion and directive that the Township inspect and essentially conduct forensic analysis on the publicly-funded cell phone in order to retrieve deleted information/data. (*Id.* at 3–4.)

The trial court also rejected the Township's argument that it erred in ordering the disclosure of metadata because Requester did not specifically request such items. Although the trial court previously found that Requester did not specifically seek metadata in his request, the trial court concluded that because Requester sought "the content of all application related data stored on the cell phone," it did not expand Requester's request by ordering the Township to provide the information/data on the "reset" cell phone. The trial court stated that it "believes [that] providing [Requester] with metadata, from the supposedly 'reset' phone, conforms to the terms of the Final Determination handed down by the OOR." Then, in an apparent retraction from this statement regarding metadata, the trial court found that: "[Requester's] goal when he made his initial RTKL request more than two years ago did not hinge on getting metadata from a cellular phone. What he wanted, and what this Court and the OOR granted him, was access to 'all' information related to a government official's cell phone funded by Paint Township taxpayers." (*Id.* at 5–6.)

Addressing the Township's argument that the trial court erred in requiring it to turn over the cell phone records when they were under the control of Supervisor Vossburg as a private citizen, the trial court cited *Barkeyville Borough v. Stearns,* 35 A.3d 91 (Pa.Cmwlth.2012), and concluded:

At the time of the request in the present case, these items were under the control of an individual currently serving as a Supervisor for [the] Township. There is no arguing that this was indeed a private line ... or that the record request treads on a private citizen's affairs. Those factors should not be used as a means of bypassing the [RTKL]. People in positions of public power cannot hide from constituents by simply 'privatizing' their communications. In the instant case too, it can hardly be said that these requests amount to unjustifiable intrusions.

[Supervisor Vossburg] receives a $39.00 weekly allowance by the Township for the purposes of paying his phone bill. This information comes directly from the September 10, 2012 meeting minutes.... This action took place ten days after the Township 'privatized' the line.... While the Supervisor may wish to hide behind his status as a private citizen, he cannot divorce himself from his responsibilities and duties as a Township supervisor. This is not just a private citizen. Nor is it a former public official. This is an elected official who receives pecuniary benefits while holding office and serving the people of the Township. As such, he must be held responsible as a public figure under the [RTKL].

(*Id.* at 11.)

## Discussion

■ On appeal to this Court,[5] the Township argues that the trial court erred: (1) in directing the disclosure of metadata; (2)

---

5. Our scope of review in a RTKL case where the trial court sits as a reviewing court is whether the trial court committed an error of law and whether its findings of fact are supported by substantial evidence. *Chester Community Charter School v. Hardy,* 38 A.3d 1079, 1082 n. 4 (Pa.Cmwlth.2012).

in requiring it to retrieve information from the publicly-funded cell phone when the evidence established that any such records do not currently exist; and, (3) in compelling the production of cell phone records when the line was privatized in Supervisor Vossburg's name.

### Metadata

The Township argues that the trial court erred in directing disclosure of metadata when Requester did not specifically request metadata. Under the facts and circumstances of this case, we find this argument to be a misnomer. While the trial court in its original opinion found that any request for metadata was outside the scope of the request, (R.R. at 339a), the trial court in its subsequent Pa.R.A.P. 1925(a) opinion apparently used the terms "data" and "metadata" interchangeably— and perhaps inadvertently—on a few occasions, or, at the very least, expressed confusion as to whether it was actually ordering the disclosure of metadata. Nonetheless, the trial court ordered the Township to "[r]etrieve the data from [the] cell phone .... and provide the records to 'Requester.'" (R.R. at 342a, emphasis added). Accordingly, the real issue in this case is whether the trial court erred in ordering the retrieval of "data" in an attempt to re-create the "deleted" or "reset" information that Requester clearly requested (i.e., voice, text, picture, and video messages, and browser history, address books, and internet connection logs), regardless of whether the "data" in the cell phone is dubbed data fragments, metadata, application-related data, or some other technical term.

In any event, we note that metadata is inseparable from Electronic Stored Information (ESI), and, being a conjoined part of ESI documents, metadata must be disclosed along with an ESI document. *See*

*O'Neill v. City of Shoreline,* 170 Wash.2d 138, 240 P.3d 1149, 1153 (2010) (concluding that "metadata in an electronic document is part of the underlying document [and] does not stand on its own."); *Lake v. City of Phoenix,* 222 Ariz. 547, 218 P.3d 1004, 1007 n. 5 (2009) (explaining that "inherent or application metadata ... is ... embedded in the file it describes and moves with the file when it is moved or copied."); *id.* at 1008 ("[T]he metadata forms part of the document as much as the words on the page."). However, as explained more fully below, the record demonstrates that all ESI has been deleted. Consequently, any substantive discussion of metadata on a conceptual level would be irrelevant, because the main issue in this case concerns the retrieval of deleted ESI or deleted data. *See In re Justice,* (No. 1:11–mc–3, E.D. Tenn. 2012, filed June 25, 2012) (unreported), slip op. at 22 ("[The expert witness] confuses metadata with data retained on a computer's hard drive even if the document is deleted.... [M]etadata is simply a non-issue in this case.").

### Conducting Forensic Analysis to Retrieve Information that Does Not Exist

The Township argues that the trial court erred in requiring it to retrieve or recreate a record that does not currently exist, noting that "[a] forensic search of the cell phone device is beyond the abilities of the Township employees and its counsel to extract any existing data ... and create a document of the transactions, all of which would require specialized expertise, software and/or tools." (Township's brief at 23.) We agree.

In *Moore v. Office of Open Records,* 992 A.2d 907 (Pa.Cmwlth.2010), the requester sought a copy of his judgment of sentence from the Department of Corrections (Department). In response, the Department

claimed that this record "does not currently exist" and submitted affidavits to that effect. In affirming the Office of Open Records' (OOR) denial of the requester's appeal, this Court explained:

> [The requester's] sole argument on appeal is that the Department's statement that a judgment of sentence does not *currently exist* leads him to believe that such a record must have existed at some time and, therefore, either the Department or the OOR has a duty to produce the record under the RTKL. However, [the requester] misinterprets the statutory language, specifically, the use of the word "currently" as used in [s]ection 705 of the RTKL, stating that "an agency shall not be required to create a record which does not *currently exist*." 65 P.S. § 67.705. **Under this provision, whether or not a judgment of sentence existed at some point in time is not the proper standard—the standard is whether such a record is in existence and in possession of the Commonwealth agency at the time of the right-to-know request.** The Department searched its records and submitted both sworn and unsworn affidavits that it was not in possession of [the requester's] judgment of sentence—that such a record does not currently exist. These statements are enough to satisfy the Department's burden of demonstrating the non-existence of the record in question, and obviously the Department cannot grant access to a record that does not exist. Because under the current RTKL the Department cannot be made to create a record which does not exist, the OOR properly denied [the requester's] appeal.

*Id.* at 909 (italics in original) (bold font supplied).

In *Department of Environmental Protection v. Cole,* 52 A.3d 541 (Pa.Cmwlth. 2012), the requester sought, among other things, specific information from the Department of Environmental Protection (Department) related to a rebate program. Although admitting that it had the requested information, the Department argued that it cannot be compelled to search through a computer database because this would constitute creating a record that does not exist. On appeal, this Court concluded that when requested information exists in a database, it must be provided, with certain conditions, to the requester. We explained that "**[a]n agency need only provide the information in the manner in which it currently exists**" and ordered the Department to provide the requester with the information in the computer database, "but only in the format in which it is available." 52 A.3d at 547–48 (emphasis added). This Court further noted that the Department does not have to assemble the information into a new format and that "**the information contained in databases ... must simply be provided to requestors in the same format that would be available to agency personnel.**" *Id.* at 549 & n. 12 (emphasis added).

To bolster our conclusion in *Cole,* we cited an unreported decision, *Gingrich v. Pennsylvania Game Commission,* 2012 WL 5286229 (Pa.Cmwlth., No. 1254 C.D. 2011, filed January 12, 2012). In *Gingrich,* a requester sought statistical data relating to Pennsylvania's annual deer harvest, habitat programs, and related financial information. This information was contained in the Game Commission's computer database, and the requester suggested possible formats for the Game Commission to produce that information. Although tacitly conceding that responsive record exists, the Game Commission denied the request on the grounds that it did not have to create a record and the information sought did not exist in the particular format identified by the requester, specifical-

ly a charted table. This Court concluded that suggesting a possible format in which to present the requested information was not an improper request to create a record or compile a new record. Specifically, we held:

> [T]hat a requester suggests a format or provides examples of the records sought in a certain format does not mean that a requester seeks special compilation. Requesters may provide suggestions or examples in order to better inform an agency about the information requested, and we have no desire to discourage that practice. In this case, [r]equester advised that the formats were suggested rather than required. Requester thus placed the Commission on notice of his preferences—no more, no less.
>
> Providing data from an agency database does not constitute creating a record. This Court holds that information contained in a database must be accessible to requesters **and provided in a format available to the agency. To the extent that the data exists in some format, the Commission must provide it.** *See* 65 P.S. § 67.305 (any record in possession of an agency is public unless exempt, as proven by the agency). Accordingly, the Commission must disclose data responsive to the [request] in any format in which the information exists.

*Id.,* slip op. at 16.

■ Here, Requester did not submit his request until November 28, 2012. Through Blose's affidavit and testimony, the Township has established that there were no ESI documents on the phone at the time of Requester's request, and Verizon Wireless stated in an affidavit that it has no data-related records for the cell phone after August 30, 2012. Besides demonstrating that the data/information on the cell phone is not available, the record supports the Township's assertions that the requested information does not currently exist in any ascertainable format.

In the absence of bad faith, Blose's attested contentions in her affidavit regarding the non-existence of data on the phone and assertion that Verizon Wireless has already verified that application-related data does not exist on the phone should be sufficient. *See Office of the Governor v. Scolforo,* 65 A.3d 1095, 1103 (Pa.Cmwlth. 2013) (*en banc*) ("Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned."); (Trial court op. at 3) ("The court does not mean to question [Blose's] motivations and believes she testified truthfully...."). Under prevailing case law, this evidence, in and of itself, is more than sufficient to establish that the records do not currently exist, much less in their original form. *See Moore,* 992 A.2d at 909.

Despite Verizon Wireless' representation that the information/data ceased to exist months before Requester's request, the trial court apparently found that the publicly-funded cell phone was "reset," but expressed reservations that all the data had been "deleted," because Blose relied on and relayed the representations of Supervisor Vossburg that all information/data had been cleared and the phone deactivated. (Trial court op. at 2–3.) However, Blose's reliance on and conveyance of Supervisor Vossburg's statements does not render her testimony or Supervisor Vossburg's statements incompetent because Supervisor Vossburg had personal knowledge of the facts forming his statements. *See Kay v. FCC,* 976 F.Supp. 23, 34 n. 29 (D.D.C.1997) (concluding that affidavits accounting for searches of documents that contain hearsay are acceptable where the second-hand statements are based upon personal knowledge).

Notably, the trial court did not explicitly find that all the data had not been "deleted," and, instead, assumed that "while the data has been deleted, such information has not disappeared and must reside on the phone in some form." (Trial court op. at 3) ("Computer forensics is a cottage industry in the United States. A basic tenant [*sic*] of the industry is that deleted, or in our case 'reset' information is not actually deleted. Retrieving information takes little time"). While this may be a scientific possibility, the trial court recognized that the Township would be required to engage the assistance of a forensics expert to retrieve the deleted data.

Moreover, the trial court's determination that the information on the phone is retrievable is unsustainable as a factual finding. Significantly, Requester did not counter the Township's evidence, and there is no competent or admissible evidence of record to support a finding that the "reset" or "deleted" information/data is recoverable, still "exists" in some form, or can be formatted or organized in the same manner in which it originally existed and was maintained. There is a dramatic difference between drawing information known to exist from a computer database in a "format available to the agency," *Gingrich*, slip op. at 16, and where, as here, it has been established that the information does not exist in any ascertainable format.

In accordance with *Moore* and *Cole*, and the trial court's finding, the Township has established the current non-existence of the requested information under section 705 of the RTKL. Hence, the only possible way to retrieve the information, as noted by the trial court, is through forensic analysis. The Township has already noted to the trial court that this would require the hiring of a specialist to attempt to re-create a record which does not exist, and

the Township "cannot be made to create a record which does not exist." 992 A.2d at 909.

Nonetheless, the trial court expresses its belief that if the Township performs technical, forensic analysis of the publicly-funded cell phone, it may be able to retrieve residual fragments of information/data that could possibly lead to the existence—and ultimately the recovery and re-creation—of responsive documents. However, such a possibility is not supported by the record, and it clearly constitutes the creation of a record that is not currently in existence. Absent supporting evidence, the trial court's presumption that the records have maintained a metaphysical existence in the form of so-called data is not adequate to support a conclusion that the requested records currently exist in "the same format ... available to agency personnel." *Cole*, 52 A.3d at 549 & n. 12. Whatever it is called, the information believed to still reside within the phone—or, presumably, the bits of scattered and not readily-decipherable data and electrical impulses on a computer chip—was never shown to be a record of the Township, and the trial court erred in presuming otherwise.

Moreover, it is noteworthy that, at least two months prior to his request, Requester attended the Township's September 12, 2012 meeting and the record indicates that he was placed on notice that the data/information on the cell phone may be deleted and the phone sold in the then-immediate future. (R.R. at 265a, 268a.) The record does not contradict that Supervisor Vossburg cleared all of the information/data because the Board of Supervisors terminated the contract with Verizon Wireless, intended to sell the phone to an outside party, and was concerned with the confidential health and personal information stored on the phone regarding the Town-

ship's employees. Supervisor Vossburg's actions in deleting the phone's contents and resetting the phone to factory settings appear consistent with the Township's dispositional directive. *See* section 507 of the RTKL, 65 P.S. § 67.507 (stating that "[n]othing in [the RTKL] shall be construed to modify, rescind or supersede any record retention policy or disposition schedule of an agency established pursuant to law, regulation, policy or other directive."); *P.G. Publishing Company, Inc. v. Governor's Office of Administration,* (Pa.Cmwlth., No. 481 M.D. 2014, filed October 31, 2014) (single-judge unreported opinion by Pellegrini, P.J.), slip op. at 12 (concluding that agency did not have a duty under the RTKL to retain records because the agency's record retention and disposition policy was "specifically preserved under Section 507 of the RTKL.").[6] Requester does not contend that Supervisor Vossburg's deletion of the data/information on the phone was done in bad faith, in anticipation of disclosure under the RTKL, in violation of the Township's record retention policy/directive, or unreasonable.

For these reasons, we vacate the portion of the trial court's order directing the Township to "[r]etrieve the data from the cell phone that is being held by the Township and ... provide the records to [Requester]," (R.R. at 342a), because the evidence demonstrates that such records do not currently exist. Out of respect for the trial court's apparent concern that Supervisor Vossburg may not have properly "deleted" the information/data on the publicly-funded cell phone, we remand the matter to the trial court for further proceedings of a limited nature. On remand, a Township employee and/or Supervisor Vossburg (not

an Information Systems Technician) shall inspect the phone again and file sworn affidavit(s), detailing his/her/their search of the apps, folders, and/or browser history and discussing whether there is readily available or discernable ESI or information/data on the phone. The trial court shall assess the affidavit(s) and determine whether the information/data on the publicly-funded cell phone has been deleted from the phone as a matter of fact.

### Production of Records on the Cell Phone after it was Privatized but used for Township Business and Paid for in part by the Township

■ The Township contends that records related to Supervisor Vossburg's privatized cell phone cannot be disclosed because he purchased the phone himself and it is his personal phone number. We disagree.

As noted by the trial court in its Pa. R.A.P. 1925(a) opinion, our decision in *Barkeyville* refutes the Township's argument. In that case, the requesters sought, among other things, e-mails between borough council members. The borough contended that this information was contained on the council members' personal computers, and, consequently, was not in the possession, custody, or control of the borough. On appeal, this Court in *Barkeyville* disagreed, noting that the requested information was between council members and discussed borough business. We further noted that the council members were acting in their official capacity as elected officials and that the requested records constituted public records even though the information was located in the council members' personal computers. Accordingly, this Court concluded that the

---

**6.** Pursuant to section 414 of the Commonwealth Court's Internal Operating Procedures, a single-judge opinion shall not be cited as binding precedent, but may be cited for

its persuasive value. 210 Pa.Code § 69.414; *Sears v. Corbett,* 49 A.3d 463, 471 n. 6 (Pa. Cmwlth.2012) (*en banc* ).

e-mails were public records subject to disclosure.

Similarly, here, the phone records between Supervisor Vossburg and the other Township supervisors pertaining to Township business constitute a public record. Further, as the trial court astutely observed, the Township is reimbursing Supervisor Vossburg on a monthly basis for the cell phone, and Supervisor Vossburg cannot privatize his public correspondence. *See* 35 A.3d at 97 ("If this Court allowed [c]ouncil members to conduct business through personal email accounts to evade the RTKL, the law would serve no function and would result in all public officials conducting public business via personal email."). Therefore, we affirm the portion of the trial court's order directing the Township to provide redacted phone records for Supervisor Vossburg's cell phone, after the number was transferred to him privately, for calls among the Supervisors concerning Township business. (R.R. at 342a.)

## Conclusion

Accordingly, we affirm in part and vacate in part. We remand the matter back to the trial court to receive additional affidavits as discussed above and render a factual determination consistent with this opinion.

## *ORDER*

AND NOW, this 5th day of February, 2015, the October 21, 2013 order of the Court of Common Pleas of Clarion County is affirmed in part and vacated in part. The case is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.