IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ernest H. Sharif,                                 :
                    Petitioner                    :
                                                  :     No. 1241 C.D. 2020
            v.                                    :
                                                  :     Submitted: October 18, 2021
Department of State (Office of Open               :
Records),                                         :
                    Respondent                    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                       FILED: January 18, 2022


            Petitioner Ernest H. Sharif (Sharif) petitions for review, *pro se*, from a
final determination of the Office of Open Records (OOR), seeking to reverse its
determination that the Department of State (Department) was not obligated to produce
Sharif's requested records under Pennsylvania's Right-to-Know Law (RTKL).[1]  We
affirm.

                        **Facts and Procedural History**

            The facts of this case are as follows:  On January 13, 2020, Sharif filed a
RTKL request for "all of the available boxing records of the matches [he] refereed in
Pennsylvania from 1988 through [the] present."  (Certified Record (C.R.), OOR Ex. 1,

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

at 8.) Sharif alleges that on January 22, 2021, he spoke with Rebecca Fuhrman, the Department's Open Records Officer, and she admitted that the Pennsylvania Athletic Commission "had the information of the [p]articipants in the [b]oxing [m]atches (Boxers) and the [d]ates of the [m]atches dating back to 1988, but that [the Pennsylvania Athletic Commission] did not have the [l]ocations of the [m]atches or the [o]utcome of the [m]atches (who won and lost)." (Pet'r's Br. 3.)

On February 20, 2020, after invoking a 30-day extension of time to respond to the request, the Department issued a response, wherein it granted Sharif's requests for the years ranging from 2016-2019 and stated that it would provide the remaining records on a rolling basis. (C.R., OOR Ex. 11, at 2-3.) The remaining records, the Department asserted, were stored at and were to come from the State Archives Building. (C.R., OOR Ex. 1, at 3.) The Department stated that it has an Agency Retention policy of five years and a State Records Center Retention policy of five more years. Therefore, the Department could only retrieve records within the last 10 years. (C.R., OOR Ex. 9, at 5.) On March 5, 2020, Sharif appealed to the OOR, challenging the sufficiency of the records provided and stating grounds for disclosure. The OOR invited both parties to supplement the record and directed the Department to notify any third parties of their ability to participate in this appeal. (C.R., OOR Ex. 11, at 3.) *See* section 1101(c)(1) of the RTKL, 65 P.S. §67.1101(c)(1).[2]

---

[2] A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

65 P.S. §67.1101(c)(1).

On October 13, 2020, following multiple extensions and discussions between the parties, Sharif submitted a position statement limiting the scope of the appeal to records that were not provided for the years 1988 through 2001. He explained that on August 7, 2020, he was provided with records from 2002-2019 that satisfied his request as to those years; however, he believed that records should exist prior to 2002. He specifically argued that it "ma[de] no sense for the Department to destroy professional boxing records after 10 years and that[,] in fact, he was provided with records that are more than 10 years old." (C.R., OOR Ex. 11, at 3.)

In support of his position statement, Sharif posed a hypothetical question to the OOR appeals officer, which he believed showed that the Department acted in bad faith in responding to his RTKL request. This hypothetical reads as follows:

> Joe Pug was born and raised in Pennsylvania. He became a professional boxer in 1994 and retired in 2007, a [13-]year career. Pug was licensed by the Pennsylvania State Athletic Commission during his entire boxing career. In 2018, Pug was diagnosed with having brain damage. Pug's family told the Medical Examiner about Pug's boxing career. The Medical Examiner needs Pug's official boxing records to determine how many fights Pug had in the ring and how many times he was knocked out.
>
> How would the Medical Examiner obtain Pug's official boxing records?

(C.R., OOR Ex. 8. at 6-8) (edited for clarity). Additionally, in his position statement, Sharif stated that the Department's representatives failed to present "[a]ny Pennsylvania state statute or ordinance to support [its] claim that professional boxing records for the state of Pennsylvania are destroyed after a 10-year period." *Id.* at 6 (edited for clarity).

On October 14, 2020, the Department submitted a statement stating that the appeal should be dismissed as premature because the Department had not issued a

final denial. In the alternative, the Department argued that the appeal should be dismissed as moot or denied because all available boxing records have been provided to Sharif and there are no other responsive records. The Department submitted the statement under penalty of perjury, *i.e.*, an affidavit, from Fuhrman. *Id.*, OOR Ex. 11 at 2-3. Contained within the affidavit submitted by Fuhrman were the statements that

> the Department sent Mr. Sharif a final spreadsheet containing all of the requested information from the available boxing records that the Department has in its possession, including records compiled from the State Athletic Commissioner's personal notes dating back to 2002.

> [Additionally, Fuhrman] made a thorough inquiry with the designated and/or reasonably likely records custodians for the Department regarding the requested records [], and based on the information provided to [her], [she] affirm[ed] that, to the best of [her] knowledge, information and belief, no additional requested records exist within [the] Department that have not already been provided.

*Id.*, OOR Ex. 9, at 5-6.

On November 3, 2020, the OOR issued its final determination. *Id.*, OOR Ex. 11, at 8. The OOR appeals officer held that Sharif's appeal was not premature, as the Department's "purported grant" of documents "on February 20, 2020[,] was a final response for the purpose of filing an appeal with the OOR"; the appeal was moot as to the records the Department had already provided; and the Department, by introducing the sworn affidavit of Fuhrman, demonstrated that no additional responsive records exist. *Id.* at 6-7. Based on this reasoning, coupled with a finding that there was no evidence the Department acted in bad faith, the OOR appeals officer determined that the Department had "met its burden of proof that it does not possess [the] additional

4

records" Sharif requested. *Id.* at 8. Accordingly, the OOR appeals officer dismissed Sharif's appeal. *Id.* Sharif thereafter filed a petition for review with this Court.[3]

## Issues

Sharif raises three issues on appeal: (1) whether the OOR appeals officer erred in failing to respond to Shariff's hypothetical question that showed the Department acted in bad faith; (2) whether the OOR appeals officer erred in not addressing the alleged admission by the Department's representative that the Department possessed the requested documents; and (3) whether the Pennsylvania State Athletic Commission possesses paper copies of the records that Sharif requested in the format of electronic records.

## Discussion

The RTKL is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd* 75 A.3d 453 (Pa. 2013). The Department is a Commonwealth agency subject to the RTKL and it is required to disclose public records. Section 301 of the RTKL, 65 P.S. §67.301. Records in the possession of a Commonwealth agency are presumed public unless exempt under the RTKL or other law or protected by a privilege, judicial order or decree. *See* Section 305 of the RTKL, 65 P.S. §67.305. Upon receipt of a request, an agency is required to assess whether a record requested is within its possession, custody, or control and respond within five business days. *See* Section 901 of the RTKL, 65 P.S. §67.901.

---

[3] This Court decides OOR appeals under the RTKL using a *de novo* standard of review, and the scope of review is plenary. *See Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013); *see also Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 438 n. 6 (Pa. Cmwlth. 2011).

"The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access [is] on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1). "Preponderance of the evidence is such proof as leads the fact-finder . . . to find that the existence of a contested fact is more probable than its nonexistence." *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 439 (Pa. Cmwlth. 2011) (quoting *Department of Transportation v. Agricultural Lands Condemnation Approval Board*, 5 A.3d 821, 827 (Pa. Cmwlth. 2010)). Pursuant to section 705 of the RTKL, "an agency shall not be required to create a record which does not currently exist." 65 P.S. §67.705. "The burden of proving a record does not exist . . . is placed on the agency responding to the right-to-know request." *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011).

We now turn to the issues that Sharif raises before this Court. In his first issue, Sharif asserts that the OOR appeals officer erred in failing to respond to his hypothetical question, which he contends shows that the Department acted in bad faith. *See* Pet'r's Br. 6. However, the OOR appeals officer does not have a duty to respond to a party's hypothetical questions in adjudicating controversies.[4] Instead, an OOR

---

[4] An appeals officer's duties pursuant to Section 1102 of the RTKL are:

> (a) Duties.--An appeals officer designated under section 5031 shall do all of the following:
> > (1) Set a schedule for the requester and the open-records officer to submit documents in support of their positions.
> > (2) Review all information filed relating to the request. The appeals officer may hold a hearing. A decision to hold or not to hold a hearing is not appealable. The appeals officer may admit into evidence testimony, evidence and documents that the appeals officer believes to be reasonably probative and relevant

**(Footnote continued on next page…)**

6

appeals officer may hold a hearing regarding a request made and can limit evidence to that which "the appeals officer believes to be reasonably probative and relevant to an issue in dispute. The appeals officer may limit the nature and extent of evidence found to be cumulative." *Id.* As the Department correctly notes, nothing in the RTKL requires the OOR appeals officer to respond to a petitioner's hypothetical question. *See* Resp't's Br. 9. Although Sharif states that his hypothetical question challenges whether the Department acted in good faith, Pet'r's Br. 8, at most, it could serve as a basis to question the veracity of Fuhrman's affidavit stating that the Department did not possess the requested documents.

This Court has held that when a Commonwealth agency has searched its records and submits a sworn affidavit that it was not in possession of the records, it satisfies the agency's burden to prove that the records in question do not exist. *See, e.g.*, *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010). For example, in *Moore*, we concluded that affidavits affirming that a requested document did not currently exist was sufficient evidence to establish that an agency does not possess the records. *See id.* In that case, Moore appealed a Department of Corrections' denial of his request for documents. *Id.* at 908. The department provided in an affidavit, made under the penalty of perjury, that it could not produce the documents requested by Moore because the documents did not exist at the time ("does not currently exist"). *Id.* at 908-09. This Court held in favor of the department. *Id.* at 910. The Court reasoned that the standard to be used to determine whether a document exists

---

to an issue in dispute. The appeals officer may limit the nature and extent of evidence found to be cumulative.
(3) Consult with agency counsel as appropriate.
(4) Issue a final determination on behalf of the Office of Open Records or other agency.

65 P.S. §67.1102.

7

"is whether such a [document] is in existence and in possession of the Commonwealth agency at the time of the right-to-know request." *Id.* at 909. In *Moore*, "[t]he [d]epartment searched its records and submitted both sworn and unsworn affidavits that it was not in possession of Moore's [documents]—that such a record does not currently exist." *Id.* This Court held that those statements by the department were "enough to satisfy the [d]epartment's burden of demonstrating the non-existence of the record in question, and obviously the [d]epartment cannot grant access to a record that does not exist." *Id.*

Here, the OOR appeals officer relied on Fuhrman's affidavit which indicated that the Department, after conducting a search of its records, did not possess the requested documents. *See* C.R., OOR Ex. 9, at 5-6. Specifically, Fuhrman attested that she "made a thorough inquiry with the designated and/or reasonably likely records custodians for the Department regarding the requested records . . . , and based on the information provided to [her], [she] affirmed that, to the best of [her] knowledge, information and belief, no additional requested records exist within [the] Department that ha[d] not already been provided." C.R., OOR Ex. 9, at 5-6. Fuhrman also attested that after Fuhrman called Sharif and let him know the Department could not produce all of his requested records, the Department sent a final spreadsheet with all of the available requested information to Sharif. *See id.* "Where . . . no evidence has been presented to show that the [agency] acted in bad faith, the averments in the [agency's] affidavits should be accepted as true." *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014); *see also Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*) ("Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.").

Sharif's hypothetical question, standing alone, does not tend to prove that the Department acted in bad faith, or that the Department possesses the requested records. In sum, the appeals officer and the Department do not have to answer hypothetical questions. Fuhrman submitted an affidavit attesting that the Department made a thorough inquiry and searched for the requested records. The Department is deemed to have provided sufficient evidence that it acted in good faith and does not possess the requested documents. Therefore, we conclude that this issue raised by Sharif is meritless.

In his second issue, Sharif argues that the OOR appeals officer erred in not addressing the alleged admission by Fuhrman that the Department possessed the requested documents back to 1988. In Sharif's brief, Sharif asserts that he "spoke with Fuhrman and she clearly stated that [the Pennsylvania Athletic Commission] had the information[, that is the requested documents]." Pet'r's Br. 3. However, other than his assertions that Fuhrman admitted this, Sharif failed to provide sufficient, competent, and credible evidence to overcome the verified statement in Fuhrman's affidavit that the Department does not possess the requested documents. As stated in *Moore*, an affidavit may be sufficient for an agency to establish that it made a good faith effort to search for and obtain requested RTKL documents that are currently in its possession. *See id* (footnote omitted). Absent contradictory evidence rebutting Fuhrman's averments, her affidavit, "in and of itself, is more than sufficient to establish that the records do not currently exist. . . ." *Paint Township v. Clark*, 109 A.3d 796, 806 (Pa. Cmwlth. 2015). As such, we dismiss Sharif's contention.

In his third issue, Sharif questions whether the Pennsylvania Athletic Commission truly possesses the paper copies of records that he requested be transferred to electronic records. However, this issue was not presented to the OOR appeals

9

officer, and Sharif admits this in his brief.  *See* Pet'r's Br. 6.  As this Court has held, issues not presented to an OOR appeals officer are waived in a further appeal.  *See Crocco v. Pennsylvania Department of Health*, 214 A.3d 316, 321 (Pa. Cmwlth. 2019) ("our review is limited to the issues presented in the appeals officer stage").  Therefore, we reject this issue.

Lastly, we address a statement made by Sharif, namely that the Department failed to present any evidence that there is a state statute requiring boxing records to be destroyed after 10 years.  (C.R., OOR Ex. 8, at 6.)  Pursuant to the RTKL, an agency may have their own "record retention policy or disposition schedule . . . established pursuant to law, regulation, policy or other directive."  Section 507 of the RTKL, 65 P.S. §67.507 ("Nothing in this act [RTKL] shall be construed to modify, rescind or supersede any record retention policy or disposition schedule of an agency established pursuant to law, regulation, policy or other directive").  Here, the Department has a 10-year record retention policy,[5] and it has not been shown that the Department's policy violated any law.  Consequently, the Department did not have a duty to retain the records under the RTKL and was free to establish its own record retention policy under section 507 of the RTKL.  *See Paint Township*, 109 A.3d at 807-08.

## Conclusion

Because the record supports the OOR appeals officer's findings that the Department provided sufficient evidence that it does not possess the documents Sharif

---

[5] Fuhrman stated in her affidavit that records for athletic events in the state remain with the agency for 10 years (five years with the agency, and five more years at a state records retention center).  Additionally, Fuhrman attested that the Department sent Sharif "all of the requested information from the available boxing records that the Department has in its possession, including records compiled from the State Athletic Commissioner's personal notes dating back to 2002."  *See* C.R., OOR Ex. 9, at 5-6.  The affidavit does not indicate where this policy is located.  *See id.*; *see also* Resp't's Br. 10.

requested, and Sharif failed to raise his third issue to the appeals officer below, we conclude that the OOR appeals officer properly upheld the Department's response to Sharif's request.

Accordingly, we affirm the November 3, 2020 final determination of the OOR appeals officer.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ernest H. Sharif,                           :
          Petitioner                        :
                                            :   No. 1241 C.D. 2020
          v.                                :
                                            :
Department of State (Office of Open         :
Records),                                   :
          Respondent                        :


## *ORDER*


AND NOW, this 18th day of January, 2022, the November 3, 2020 final determination of the Office of Open Records is hereby AFFIRMED.


_____
PATRICIA A. McCULLOUGH, Judge