# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Energy Transfer,<br>　　　　　　Appellant | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and<br>Middletown Township | : | No. 1296 C.D. 2021<br>Argued: March 6, 2023 |
| | : | |
| Middletown Township | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and<br>Energy Transfer | : | |
| | : | |
| Appeal of: Energy Transfer | : | No. 1297 C.D. 2021 |
| | : | |
| Middletown Township,<br>　　　　　　Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and<br>Energy Transfer | : | No. 1298 C.D. 2021 |
| | : | |
| Energy Transfer | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and<br>Middletown Township | : | |
| | : | |
| Appeal of: Middletown Township | : | No. 1311 C.D. 2021 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE LORI A. DUMAS, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: April 14, 2023


Before the Court are four consolidated appeals from the October 15, 2021 order of the Court of Common Pleas of Delaware County, Pennsylvania (trial court). The trial court affirmed, in part, and reversed, in part, the March 18, 2021 Final Determination of the Pennsylvania Office of Open Records (OOR), which granted, in part, and denied, in part, the appeal of Appellee Samuel Cortes (Cortes) from Middletown Township's (Township) partial denial of Cortes' request (Request) pursuant to the Pennsylvania Right-to-Know Law (RTKL).[1]

Upon review, we reverse.[2]

## I. FACTS AND PROCEDURAL HISTORY

The facts underlying this appeal largely are undisputed and can be summarized as follows:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Energy Transfer, an interested third party from whom the Township obtained documents responsive to the Request, participated in the proceedings before both the OOR and the trial court, which participation is not challenged in this appeal. (Reproduced Record (R.R.) 71a, 187a.) Both Energy Transfer and the Township filed petitions for review of the OOR's Final Determination, which petitions created two separate trial court case numbers. Both Energy Transfer and the Township then appealed the trial court's decision in both cases, resulting in the creation of four separate case numbers in this Court. We consolidated the appeals for all purposes and identified both Energy Transfer and the Township as Designated Appellants by order exited August 31, 2022. We refer to Energy Transfer and the Township together as "Designated Appellants," where appropriate.

2

## The Request

On December 16, 2020, Cortes submitted the Request to the Township seeking seven categories of information. After invoking a 30-day extension of its response deadline,[3] the Township granted the Request regarding categories two through six, denied the Request, in part, regarding category one (Category 1), and denied the request regarding category seven on the ground that no responsive documents existed. Pertinent here,[4] Category 1 of the Request sought the following records:

> All communications by and between the Township (including, but not limited to, all appointed and elected officials (e.g., Township Manager, Township Engineer, and Solicitor or Conflict Solicitor, James Flandreau, Esq.) (collectively, the "Township")) and Sunoco Pipeline, LP (including, but not limited to, Duane Morris, LLP, Energy Transfer Partners, Manko, Gold, Katcher, and Fox, LLP, and all other persons and/or entities acting for or on behalf of it (collectively, "Sunoco")), from January 1, 2019, through the present relating to the Mariner East 2 Pipeline or any work relating to the same.

(R.R. 25a.)[5] Upon receiving the Request, pursuant to section 707(a) of the RTKL, 65 P.S. § 67.707(a), the Township notified Energy Transfer's counsel of the Request and

---

[3] *See* section 902(b) of the RTKL, 65 P.S. § 67.902(b).

[4] Cortes appealed the Township's partial denial to the OOR, which granted the appeal, in part. Energy Transfer and the Township petitioned for review in the trial court, which affirmed, in part, and reversed, in part. In their appeal to this Court, Energy Transfer and the Township challenge the trial court's decision only with regard to Category 1 of the Request and the applicability of the noncriminal investigation exemption found at section 708(b)(17) of the RTKL. 65 P.S. § 67.708(b)(17).

[5] Cortes submitted a second RTKL request to the Township on December 17, 2020, to which the Township responded and produced the responsive record on December 22, 2020. (R.R. 154a-55a.) This request is not at issue in this appeal.

advised that it would require production of documents that Energy Transfer had provided to the Township.  (R.R. 157a.)  Energy Transfer responded and objected to the production of several categories of documents, including those it argued were exempt under section 708(b)(17) of the RTKL.  (R.R. 161a.)[6]  Although the Township thereafter produced a significant number of responsive documents requested under Category 1, it denied production of other documents on multiple grounds, including the noncriminal investigation exemption.[7]  (R.R. 26a.)  The Township advised Cortes that, "[a]dditionally, if you would like to review any of the documents pertaining to [*Flynn v. Sunoco*, Public Utility Commission [PUC] Docket Nos. C-2018-3006116, P-2018-3006117], they are available on the PUC docket."  (R.R. 27a.)

---

[6] Regarding section 708(b)(17) exemption, Energy Transfer's counsel advised the Township, in pertinent part, as follows:

> [Energy Transfer] voluntarily cooperates with Township requests for information related to investigations, including, but not limited to, investigations of Township property and roadways. The [section 708(b)(17)] exemption covers all communications between the Township and Energy Transfer related to such investigations, including materials supplied by Energy Transfer, in addition to the Township's own notes of and assessments of those materials.

(R.R. 161a.)

[7] The Township also withheld documents under Category 1 on the grounds that they contained confidential security, public safety, and physical security information (RTKL section 708(b)(2),(3)), were protected by the Public Utility Confidential Security Information Disclosure Protection Act, Act of November 29, 2006, P.L. 1435, 35 P.S. §§ 2141.1-2141.6, were governed by a protective order issued by court or administrative agency (RTKL section 306), reflected pre-decisional deliberations of the Township (RTKL section 708(b)(10)), and would reveal the contents of real estate appraisals, engineering or feasibility estimates, environmental reviews, audits or evaluations made for or by the Township regarding real estate transactions, the purchase of public supplies or equipment as part of a real estate transaction, or construction projects (RTKL section 708(b)(22)(i)).  (R.R. 26a.)  Although certain of these exemptions were at issue and litigated before the OOR and trial court, they are not at issue in this appeal.

4

**Before the OOR**

Cortes appealed the Township's partial denial to the OOR on February 8, 2021. (R.R. 30a.) Before the OOR, Cortes argued that the Township had not produced all non-exempt responsive documents under Category 1 and did not provide sufficient information from which the applicability of the noncriminal investigation exemption could be determined. Cortes requested that the OOR direct the production of all responsive records or, in the alternative, that the OOR conduct an *in camera* review to determine whether the Township properly withheld the records. (R.R. 184a-85a.)

Energy Transfer argued before the OOR that many of the records requested under Category 1 were publicly available on the PUC's and Township's websites, including a Township webpage dedicated to "Sunoco/Mariner East News and Information."[8] Regarding the noncriminal investigation exemption, Energy Transfer argued that the records withheld by the Township under Category 1 were exempt because they related to the Township's ongoing investigations of resident complaints and public safety issues regarding Township roadways, property, and facilities. (R.R. 82a-83a.) In support, Energy Transfer submitted the sworn declaration of Joseph Massaro, a "Lead Specialist, Public Affairs for Energy Transfer" (Massaro Declaration). (R.R. 88a.) Regarding the Township's investigations specifically, Massaro declared as follows:

> 7. Since 2019, Energy Transfer has provided the Township with extensive, detailed geophysical and locational data related to its pipeline operations and/or construction pursuant to the Township's non[ ]criminal investigations of resident complaints and public safety issues related to Township roadways, property, and facilities. Specifically, these records represent geophysical reports, data requests, and correspondence detailing Energy Transfer's pipeline operation.

---

[8] Available at https://middletowndelcopa.gov/sunoco, last visited April 13, 2023.

8. Energy Transfer voluntarily provided numerous confidential records regarding its pipeline operations and/or construction to the Township with the understanding that this confidential information was being provided solely for the purposes of the Township's independent review and investigation and that such records would not be publicly released.

9. To the extent Energy Transfer provided records subject to public release, such as public summaries of geophysical reports, these documents are publicly accessible via the Township's website.

10. Release of confidential records related to the Township's ongoing non[]criminal investigations of Energy Transfer's pipeline would endanger the integrity of the Township's investigations and Energy Transfer's due process rights, and would serve to hinder the free[]exchange of information in future non[]criminal investigations.

(Massaro Declaration, ¶¶ 7-10; R.R. 90a-91a.)

Energy Transfer also submitted two at-large letters the Township sent to residents on September 13, 2019, and November 21, 2019, in which the Township advised residents that its investigations of Energy Transfer's Mariner East 2 Pipeline were ongoing. (R.R. 115a, 116a.) The September 13, 2019 letter advised Township residents that Township staff had received notice of a "subsidence" that occurred "South of Forge Road, along Valley Road," and that the PUC had been notified. It further advised that "Township staff [is] onsite to assess, and the situation is an ongoing investigation. [The] Township will provide more information once information is available and confirmed." (R.R. 116a.) In its November 21, 2019 letter, which concerned a "November 18, 2019 subsidence," the Township advised residents that the PUC continued its investigation and assessment of the incident and that the Township retained a geophysics engineering firm to "assist with independent review and

confirmation of the site to provide further confidence that the roadway is safe for public use." (R.R. 115a.) The Township also indicated that Township staff would update the Township webpage with any "new confirmed information." (*Id.*)

The Township also argued before the OOR that the withheld records were exempt from disclosure under the noncriminal investigation exemption. In support, the Township submitted an attestation from John McMullan, the Township's open records officer (McMullen Attestation), and a 30-page "exemption log" that included the date, type, subject matter, sender, recipient, and exemption claimed for each of approximately 600 withheld records. (Exemption Log). (R.R. 165a, 119a-48a.) McMullan attested that he had conducted a good faith search for responsive records and that the Township had withheld certain documents pursuant to the noncriminal investigation exemption, which were identified in the Exemption Log. McMullen further relied upon the OOR's prior determination in *Fuller v. Middletown Township* (Pa. Off. Open Rec. Docket No. AP 2020-1286, filed September 11, 2020), which involved a July 2020 RTKL request to the Township for records relating to the same pipeline subsidence issues. (R.R. 165a.)

In its final determination, the OOR agreed with Cortes and concluded that the Township and Energy Transfer failed to prove that the withheld records related to a noncriminal investigation. The OOR agreed that the Township has the authority under its home rule charter to conduct a noncriminal investigation of Energy Transfer's pipelines and related safety issues, but nevertheless concluded that the Township's and Energy Transfer's affidavits, Exemption Log, and other evidence did not establish that the Township conducted such an investigation or that the withheld records adequately related to such an investigation. (OOR Final Determination, at 10-13.)

**In the Trial Court**

In their petitions for review in the trial court, Energy Transfer and the Township argued that the OOR erred as a matter of law and directly contradicted its

7

prior final determination in *Fuller*, in which it concluded that the noncriminal investigation exemption applied to documents that related to the same investigation of safety issues allegedly caused by Energy Transfer's drilling activity. (R.R. 205a-06a, 235a-38a.) Cortes again argued that the evidence submitted by the Township and Energy Transfer to support the application of the noncriminal investigation exemption was insufficient. (R.R. 356a, 364a-68a.)[9]

The trial court affirmed the OOR's Final Determination to the extent that it directed the Township to produce all documents requested in Category 1.[10] The trial court concluded that the OOR's Final Determination was distinguishable from that in *Fuller* and that the affidavits and Exemption Log submitted by the Township and Energy Transfer were insufficient to establish the applicability of the noncriminal investigation exemption:

> A review of the exemption log and the affidavits submitted to support [the noncriminal investigation exemption], however, fail to disclose specifics regarding the investigations allegedly conducted and, more significantly, how the records cited in the log relate to such noncriminal investigations. While [Designated Appellants'] time and efforts in compiling the [E]xemption [L]og clearly [were] substantial and constituted a good-faith effort to qualify these documents for the non[ ] criminal investigation exemptions, we are constrained to conclude that the absence of any linkage between the documents and the investigations themselves prevents the logs and affidavits from being sufficient to sustain the [Designated Appellants'] burden on this issue.

> Each claim that a record is exempt as relating to an investigation must be decided on its unique facts, and merely

---

[9] On August 5, 2021, the Township produced additional documents to Cortes that previously had been withheld solely based on the "common interest" privilege. (R.R. 480a-81a, 522a-26a.)

[10] The trial court reversed the OOR's determination regarding another category of records not at issue in this appeal.

8

because a record has some connection to an investigation does not automatically exempt it under the [RTKL]. *Central Dauphin School District v. Hawkins*, 199 A.3d 1005 (Pa. Cmwlth. 2018). In view of the aforesaid inadequacy of connection between the documents listed in the [Exemption Log] and any underlying non[ ]criminal investigations, we conclude that these documents are not exempt from production under the [RTKL] . . . .

(Trial Court Op. at 7.) Both the Township and Energy Transfer now appeal to this Court.

## II.   QUESTIONS PRESENTED

The Township and Energy Transfer raise several issues and sub-issues on appeal, all of which collectively relate to different aspects of the single overarching question of whether the Township and Energy Transfer carried their burden to establish the applicability of the noncriminal investigation exemption to the documents withheld under Category 1. We will address the several lesser-included issues raised by the parties at appropriate points in our analysis below.

## III.   DISCUSSION

### A.   Applicable RTKL Principles

The objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government." *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 380 (Pa. Cmwlth. 2014) (quoting *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012)). Under the RTKL, records in the possession of a local agency[11] are presumed to be public unless (1) exempt from disclosure under section 708 of the RTKL, 65 P.S. § 67.708, (2) protected by privilege, or (3) exempt from disclosure under other law or

---

[11] The Township is a local agency subject to the RTKL. *See* sections 102 and 302(a) of the RTKL, 65 P.S. §§ 67.102, 67.302(a).

9

court order. Section 305 of the RTKL, 65 P.S. § 67.305. We construe exemptions from disclosure narrowly, *Carey v. Department of Corrections*, 61 A.3d 367, 373 (Pa. Cmwlth. 2013), and the local agency bears the burden of proving a record is exempt from disclosure. *Id.* at 372; 65 P.S. § 67.708(a)(1).

With regard to an agency's noncriminal investigation, section 708(b)(17) of the RTKL provides, in relevant part, as follows:

> **(b) Exceptions**.--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> . . . .
>
> (17) A record of an agency relating to a noncriminal investigation, including:
>
> > (i)  Complaints submitted to an agency.
> >
> > (ii) Investigative materials, notes, correspondence and reports.
> >
> > . . . .
> >
> > (vi) A record that, if disclosed, would do any of the following:
> >
> > > (A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.
> > >
> > > . . . .

65 P.S. § 67.708(b)(17)(i), (ii), (vi)(A). This Court has determined that the term "investigation" means "a systematic or searching inquiry, a detailed examination, or an

official probe." *Department of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). For this exemption to apply, an agency's inquiry, examination, or official probe must be conducted as "part of the agency's official duties." *Id.* at 814. "As such, in order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties." *Id. See also Department of Public Welfare v. Chawaga*, 91 A.3d 257, 259 (Pa. Cmwlth. 2014) (an "official probe" under section 708(b)(17) is a noncriminal investigation "conducted by an agency acting within its legislatively granted fact-finding and investigative powers"; any broader interpretation would "craft a gaping exemption, under which any governmental information-gathering could be shielded from disclosure") (citation and quotation omitted).

With regard to the types of evidence that an agency may submit to satisfy its burden to establish that otherwise public records are not subject to disclosure, "[t]estimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013). Further,

> [a]ffidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested documents under each exemption upon which it relied . . . . The affidavits must be detailed, nonconclusory, and submitted in good faith. . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

*Office of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*) (emphasis added) (internal citation omitted). Additionally, "a privilege log, which typically lists the date, record type, author, recipients, and a description of the withheld record, can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit." *McGowan*, 103

A.3d at 381 (citing *Heavens*, 65 A.3d at 1075-77). Nevertheless, although testimonial affidavits may provide sufficient evidence to support an exemption to disclosure, "conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show" that an exemption applies to deny access to records. *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017).

Finally, where interested third parties are permitted to participate directly in RTKL appeals, those parties may submit evidence before the initial fact-finder to establish exemptions from disclosure, and their interest in protecting records from disclosure may not be waived by an agency. *Pennsylvania Department of Education v. Bagwell*, 131 A.3d 638, 650-51 (Pa. Cmwlth. 2015). *See also McKelvey v. Pennsylvania Department of Health*, 255 A.3d 385, 401 (Pa. 2021).

With these principles in mind, we turn to the issues on appeal.[12]

## B.    Analysis

Both the Township and Energy Transfer argue on appeal that the trial court erred as a matter of law in concluding that the evidence submitted collectively to the OOR and trial court was insufficient to establish by a preponderance of the evidence that the withheld records "relate to" the Township's noncriminal investigation of resident complaints and safety issues regarding Energy Transfer's pipelines in the Township.

The trial court concluded that the Massaro Declaration, McMullen Attestation, and Exemption Log were insufficient to establish the exemption because they failed to disclose "specifics" regarding both the investigations conducted and how

---

[12] When reviewing a trial court's order in a RTKL appeal, we determine whether the trial court committed an error of law or whether its findings of fact are supported by substantial evidence. *Paint Township v. Clark*, 109 A.3d 796, 803 n.5 (Pa. Cmwlth. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Department of Environmental Resources v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974).

12

the records included in the Exemption Log relate to those investigations. (Trial Court Op. at 7.) We disagree. Regarding the existence and subject matter of the Township's investigation, the evidence submitted to the OOR and trial court cannot be viewed in a vacuum. The ongoing investigations of the issues surrounding Energy Transfer's pipeline activities in the Township precipitated multiple RTKL requests and appeals, a PUC investigation and related actions, several public announcement letters issued by the Township, and a public webpage devoted exclusively to the dissemination of information collected by the Township during its investigation. Further, the letters published by the Township to residents clearly indicate that the Township was conducting an "ongoing investigation" into the safety issues presented by the Mariner East 2 Pipeline. Although the letters reference a parallel investigation being conducted by the PUC, they also describe the involvement of Township staff in participating in onsite assessments and in communicating with the Pennsylvania Department of Transportation (PennDOT), the PUC, and other third-party engineering firms that had been engaged to collect information and "assist with independent review." (R.R. 115a-16a.) Considered as a whole, the evidence presented to the OOR and trial court clearly establish that the Township, pursuant to its "official duties," engaged in an ongoing "systematic or searching inquiry," "detailed examination," or "official probe" to investigate roadway and subsurface safety threats to Township residents.

Regarding whether the withheld records "relate to" the Township's investigations, we disagree with the trial court that the affidavits and Exemption Log were generic, conclusory, or non-specific. Rather, they detailed the grounds on which the records were withheld, identified the investigations that the Township was conducting, and explained the problems that disclosure would cause. The Exemption Log contains several categories of information indicating the date, subject matter, and parties involved with each record, many of which identify outright the specific roadway, pipeline, and safety issue the document regarded. These submitted materials

13

are a far cry from conclusory affidavits that, as a whole, merely recite the claimed exemption and its statutory language. *See, e.g.*, *Department of Health v. Capouillez* (Pa. Cmwlth., No. 585 C.D. 2022, filed November 16, 2022), slip op. at 21-23, 2022 WL 16954345, at \*10-\*11 (affidavits supporting noncriminal investigation exemption containing no "specifics" linking requested documents to any investigation conducted by Department of Health and privilege log containing only the name of, and claimed statutory exemption for, each withheld record were insufficient to carry the Department's burden under section 708(b)(17)).[13]

Further, although neither the trial court nor this Court are bound by OOR final determinations, we also conclude that the OOR's Final Determination in this case contradicts its prior decision in *Fuller*, in which it concluded that the Township properly withheld documents of the same type and subject matter as those involved in this case. *Fuller* was not adequately distinguished by either the trial court or OOR, and the Township was justified in relying on that decision in its partial denial of the Request.

In *Fuller*, which concerned a RTKL request submitted to the Township on July 2, 2020, the requester sought a geophysical survey completed for a road in the Township because of public safety concerns surrounding Energy Transfer's Mariner East 2 Pipeline. *Fuller*, slip op. at 3 (R.R. 219a-20a.) The Township withheld the record, relying on section 708(b)(17). In support, the Township submitted the attestation of Meredith Merino, the Township's Assistant Open Records Officer. *Fuller,* slip op. at 2, 6 (R.R. 219a, 223a.) Merino attested that the record was exempt under section 708(b)(17) of the RTKL and was the "result of an investigation launched to understand the geology of the immediate vicinity in which sinkholes had begun

---

[13] *Capouillez* is cited for its persuasive value in accordance with section 414(a) of the Internal Operating Procedures (IOP) of this Court. *See* 210 Pa. Code § 69.414(a).

14

forming after a pipe pull-through of a horizontal directional drilling operation. During the continued investigation, the Township's experts requested and were provided certain documents . . . in order to supervise the investigation process." *Fuller*, slip op. at 6 (R.R. 223a.) Energy Transfer submitted a sworn declaration by its manager of project compliance, Robert Burke, who attested that the requested record was completed pursuant to the Township's investigation of Valley Road. *Fuller*, slip op. at 7 (R.R. 224a.) The OOR concluded that the Township undertook a "systematic or searching inquiry, a detailed examination, or an official probe regarding the formation of sinkholes after certain drilling activity, that the investigation was conducted as part of the Township's official duties, and that the investigation involved the Township's legislatively granted fact-finding and investigative powers. Accordingly, the requested records are related to noncriminal investigations and may be withheld." *Fuller*, slip op. at 9 (R.R. 226a) (internal quotations omitted).

The only substantive difference between Burke's affidavit and the Massaro Declaration is that Burke's affidavit identified the name of the roadway investigated and the name of the geophysical surview being requested. (R.R. 224a.) But, the Massaro Declaration goes into further detail about the specific nature of the records requested by Cortes. Although it does not reference a specific roadway, it nevertheless indicates that the withheld records were voluntarily provided by Energy Transfer to the Township "pursuant to the Township's non[ ]criminal investigations of resident complaints and public safety issues related to Township roadways, property, and facilities." (Massaro Declaration, R.R. 90a.) Considered together with the Exemption Log provided by the Township, which identifies all of the descriptions of the documents withheld, including roadway names, we conclude that the Township in this case provided *more* evidence to support the applicability of the noncriminal

15

investigation exemption than was present in *Fuller*.[14]  To the extent that the trial court concluded to the contrary and found the affidavits submitted in this matter to be insufficiently specific, it erred.[15]

Finally, although the purpose of the RTKL is to provide access to otherwise public records, here, there are public policy interests that support interpreting section 708(b)(17) as being applicable to the Township's investigations of resident complaints and safety issues surrounding the installation of the Mariner East 2 Pipeline. Much of the information collected from Energy Transfer by the Township was provided with the understanding that it would remain confidential, at least during the pendency of the Township's investigation.  Further, the Township's investigation of the complaints from its residents and related roadway and subsidence issues caused by Energy Transfer's pipeline operations in the Township implicate the same public policy considerations at issue in *Pennsylvania Public Utility Commission v. Gilbert,* 40 A.3d 755 (Pa. Cmwlth. 2012).  In *Gilbert*, a reporter from the Wall Street Journal (Gilbert) submitted a broad RTKL request to the PUC, seeking, among other documents, "all records" related to "probable violations" identified by the PUC and "pipeline incidents" reported to the PUC by pipeline operators.  *Id.* at 756-57.  The PUC denied the bulk of the request, relying in part on the noncriminal investigation exemption in section

---

[14] The investigation of Valley Road is specifically identified in multiple "subject matters" in the Exemption Log.  *See, e.g.*, Exemption Log, R.R. 119a, log ##3-5, 14-16.

[15] Energy Transfer and the Township argue that the trial court impermissibly relied on this Court's prior decision in *Central Dauphin School District v. Hawkins*, 199 A.3d 1005 (Pa. Cmwlth. 2018), *vacated on other grounds*, 238 A.3d 337 (Table) (Pa. 2020).  The trial court cited *Central Dauphin*, but only for the legal principles that (1) RTKL exemptions are narrowly construed, (2) a local agency bears the burden of proof to establish exemptions by a preponderance of the evidence, and (3) the mere fact that a record has some connection to an investigation does not automatically exempt it from disclosure. (Trial Court Op., at 3, 7.)  Although we find *Central Dauphin* to be substantively distinguishable from this case, we also do not find that the trial court impermissibly relied on it in rendering its decision.

708(b)(17) of the RTKL. *Id.* at 757. Gilbert appealed to the OOR, which determined that the PUC did not establish that the requested records were protected by the noncriminal investigation exemption. *Id.* In the PUC's appeal to this Court, we reversed, concluding that the exemption applied. *Id.* at 761-62. In doing so, we recognized:

> Allowing access to these investigative materials that may contain unsubstantiated statements or allegations about an owner, employee or utility, would be problematic, because the owner, employee or utility would not be provided the opportunity to respond to the materials.
>
> Further, strong public policy considerations support interpreting section 708(b)(17) as being applicable to these particular inspections/investigations conducted by the PUC's [Investigation and Enforcement] gas safety inspectors. Requiring the PUC to disclose the gas safety inspectors' notes, employee statements, and other materials related to the inspections/investigations could lead to owners and employees being less likely to cooperate and provide relevant information out of fear of retaliation or public embarrassment. If individuals are less likely to cooperate in the inspections/investigations process, then the inspections/investigations will no longer be an effective means of monitoring the utilities compliance with statutory and regulatory requirements.

*Id.* at 761 (citations omitted).

Here, at the time of the request, the PUC was investigating reported subsidence incidents in the Township allegedly caused by Energy Transfer's Mariner East 2 Pipeline. The Township clearly conducted its own investigation, utilizing information received from the PUC, PennDOT, and other third-party engineering firms (like that involved in *Fuller*) to gather information, make conclusions, and report results to Township residents. Although we do not conclude that the trial court ignored

17

or failed to consider altogether the public policy interests supporting the application of the noncriminal investigation exemption in this case, we nevertheless do conclude that those interests militate in favor of applying the exemption here.

## IV. CONCLUSION

We accordingly are constrained to conclude that the trial court erred in holding that the Township and Energy Transfer did not satisfy their burden to establish the applicability of the section 708(b)(17) noncriminal investigation exemption. We therefore reverse the trial court's determination to the extent that it directed the Township to produce documents withheld under that exemption.[16]

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in this decision.

---

[16] We note that this Court recently reversed, albeit on slightly different grounds, an OOR final determination in which it directed disclosure of PUC records "that relate to pipeline projects, including Mariner East 1, 2, and 2X pipeline project[s]." *See Energy Transfer v. Rebecca Moss and Spotlight PA*, 288 A.3d 957, 959 (Pa. Cmwlth. 2023).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Energy Transfer, | : | **CASES CONSOLIDATED** |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and | : | |
| Middletown Township | : | No. 1296 C.D. 2021 |
| | : | |
| | : | |
| | : | |
| Middletown Township | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and | : | |
| Energy Transfer | : | |
| | : | |
| Appeal of: Energy Transfer | : | No. 1297 C.D. 2021 |
| | : | |
| | : | |
| Middletown Township, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and | : | |
| Energy Transfer | : | No. 1298 C.D. 2021 |
| | : | |
| | : | |
| Energy Transfer | : | |
| | : | |
| v. | : | |
| | : | |
| Samuel Cortes and | : | |
| Middletown Township | : | |
| | : | |
| Appeal of: Middletown Township | : | No. 1311 C.D. 2021 |

## *ORDER*

AND NOW, this 14th day of April, 2023, the October 15, 2021 order of the Court of Common Pleas of Delaware County, Pennsylvania (trial court), hereby is REVERSED to the extent that it required Middletown Township to produce documents withheld pursuant to section 708(b)(17) of the Right-to-Know Law.[1] The Township need take no further action with regard to those documents. The trial court's order otherwise is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(17).