People v McMillian (2024 NY Slip Op 51413(U))

[*1]

People v McMillian

2024 NY Slip Op 51413(U)

Decided on September 30, 2024

Supreme Court, Kings County

Bourne-Clarke, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 30, 2024
Supreme Court, Kings County

The People of the State of New York,

against
Shawn McMillian, Defendant.

Index No. IDV-72208-24

Zachary de Stefan, Esq., Assigned Assistant District Attorney
Jeffrey Sugarman, Esq., Attorney for the defendant.

Sharon A. Bourne-Clarke, J.

This matter having come before the court on September 30, 2024, is a motion by the defendant, Shawn McMillian, dated April 4, 2024, to (1) deem the prosecution's Certificate of Compliance invalid because the prosecution did not fulfill its initial discovery obligations under C.P.L. § 245.20(1); (2) Dismissing the accusatory instrument (C.P.L. § § 30.30, § 170.30 (1)(e), 245.20(1) among other relief requested of this court.
 BACKGROUND
The defendant, Shawn McMillian is charged with P.L. § § 120.00(1) Assault in the Third Degree. 110/120.00(1) Attempted Assault in the Third Degree, 120.15 Menacing in the Third Degree, and 240.26 (1) Harassment in the Second Degree.
This matter commenced with the filing of the first accusatory instrument in Criminal Court on December 11, 2023. The defendant was arraigned on the same day.
The People contend that this matter was assigned to ADA Maura Arnold on December 12, 2023,
On January 4, 2024, the People assert that ADA Arnold served initial discovery on defense counsel; requested outstanding discovery and any DD5s; and served and filed a Supporting Deposition. 
On March 1, 2024, the People state that ADA Arnold served and filed a Certificate of Compliance and Statement or Readiness as well as all served discovery on defense counsel at approximately 81 days chargeable to the People.
On March 1, 2024, The People assert that ADA Arnold met with Officer Wanda Blunt to confirm if there remained any outstanding discovery.
On March 15, 2024, this matter was reassigned ADA Rachael Kuper as ADA Arnold was [*2]leaving the District Attorney's Office.
On March 18, 2024, the case was heard in the DV1 part before the Hon. Judge Holaman. At that appearance, the People purportedly stated their readiness for trial. The matter was adjourned to April 5, 2024 for Defense COC and Challenges in DV1 on April 5, 2024.
On March 25, 2024, the defense state that they sent a letter detailing the outstanding discovery via email, proffered as the defendant's Exhibit B. The letter was purportedly sent to the email of now former ADA Arnold. Contained therein was a list of outstanding items that the defendant contended was missing in the initial discovery.
The following items were: (1) an Unredacted DV intake form; (2) Three (3) x Photos from the Complainant; (3) BWC Audit trail; (4) Recidivist Tracking and Reporting Database (RTRD) which is included as an attachment to the DD5s; (5) Roll Call logs; (6) Prisoner Holder Pen Roster; (7) ECMS Access Logs; (8) Central Personal Index; (9) Narrative of Incident entered into defendant's gang database; (10) a Scratch DIR; (11) Central Personnel Index (CPI) for every officer involved in the case; and (12) Recent Unredacted CCRB MOS Officer History Reports for Detective Gloria Nelson, Detective Ashley Gonzalez, Detective Carl Diaquoi, Sergeant Thomas Little, PO Rayshawn Ellison, PO Jamal Moye, PO Juan Garcia Mendez
On April 4, 2024, the People assert that they were in receipt of defense's counsel's Omnibus Motion.
On April 5, 2024, this matter was heard in DV1 Part before the Hon. Carolina Holderness. At that appearance, Judge Holderness gave the People until April 26, 2024, to respond to the Defense Counsel's Motion for and for a Response. This matter was adjourned to June 3, 2024.
This matter was transferred to the IDV Part by Order dated April 10, 2024.
This matter was first heard in the IDV Part before this jurist on May 20, 2024.
The defendant's Response to the People's Opposition was filed on June 7, 2024.

 ARGUMENT
Defendant now brings a motion to dismiss this matter under CP.L. § 170.30 (1)(e), asserting the defendant has been denied the right to a speedy trial. "To that end, the People must be ready to try a defendant accused of a misdemeanor within 90 days of commencement of the action and maintain readiness thereafter." People v. Sibblies, 22 NY3d 1174 (2014) citing People v Stirrup, 91 NY2d 434 (1998). "To be ready, the People must (1) declare in open court that they are ready or file an off-calendar certificate of readiness and serve it on defense counsel, and (2) "in fact be ready to proceed at the time they declare readiness." Id. at 1177.
CPL § 245.20 (1) states in pertinent part that "the prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." In the certificate of compliance, the People are required to "state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" and to "identify the items provided" People v. King, 216 AD3d 1400 [4th Dept 2023]) citing People v Bonifacio, 179 AD3d 977 [2d Dept 2020]). Critically, the statute ties the People's adherence to their discovery obligations and the corresponding certificate of compliance requirement to their trial readiness by providing that, "[n]otwithstanding the [*3]provisions of any other law, absent an individualized finding of special circumstances in the instant case by the court before which the charge is pending, the prosecution shall not be deemed ready for trial for purposes of [CPL] 30.30 . . . until it has filed a proper certificate pursuant to [CPL 245.50 (1)]" Id. citing (CPL 245.50 [3]; see CPL 30.30 [5]; People v Brown, 214 AD3d 823, 824, 184 N.Y.S.3d 838 [2d Dept 2023]).
"CPL 245.20, titled automatic discovery, requires disclosure to a defendant of all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." CPL 245.20 (1). "The statute enumerates 21 categories of material subject to disclosure, CPL 245.20(1). disclosure obligations include, but are not limited to, these categories, and provides that materials possessed by a New York state or local police or law enforcement agency are deemed in the People's possession for purposes of the discovery requirements, CPL 245.20(2); Article 245 also sets forth time periods for disclosure: as amended in 2020, CPL 245.10 generally requires the People to turn over automatic discovery within 20 days of arraignment if a defendant is in custody or within 35 days if not, and once the People certify compliance, a defendant has 30 days to fulfill reciprocal discovery obligations, CPL 245.10; L 2020, ch 56, § 1, pt HHH, § 1. These time periods may be stayed up to an additional 30 days when discoverable materials are exceptionally voluminous or when, despite diligent and good faith efforts, the materials are not otherwise in the People's actual possession." People v. Bay, 41 NY3d 200 (2023).
The automatic discovery statute's list is not exhaustive, requiring production of "all" material that relates to the subject matter of the case in the People's actual or constructive possession. (C.P.L. §§ 245.20[1], [2]). But it also explicitly requires the People to provide "a copy of all electronically created or stored information . . . on behalf of law enforcement from . . . a source other than the defendant which relates to the subject matter of the case." (C.P.L. § 245.20[1][u][i][B]). People v Torres, 78 Misc 3d 1206[A] [Crim Ct, Queens County 2023]. This court finds that "relates to the subject matter", in its plain statutory meaning refers to any and all items and information that relates to the subject matter of this case and all relevant facts or issues that pertain to this defendant.
The court will not address the items that the People have turned over to the defendant, which includes five (5) photos of the Complaining witness and the BCI photos. The Court will also not address the handwritten complaint form, commonly known as Scratch 61, which the People have purported does not exist and was included as a clerical error in the People's COC inventory.
Redacted DV intake Form
CPL § 245.20(1)(c) requires that the prosecution turn over the names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto, including a designation by the prosecutor as to which of those persons may be called as witnesses. The defendant contends that the COC and SOR are invalid as the People have failed to turn over an unredacted DV intake that contains the physical address of the complaining witness and the defendant's gang affiliation. Critically, the same section states that [*4]"nothing in this paragraph shall require the disclosure of physical addresses; provided, however, upon a motion and good cause shown the court may direct the disclosure of a physical address."
The statute is silent as to what is deemed as adequate. While the appellate courts have not weighed in on what is defined as adequate, lower courts have provided some direction as to what the term "adequate" means. The plain English meaning of the word "adequate" means sufficient for a specific need or requirement or of quality that is good or acceptable, according to the Merriam-Webster Dictionary. "As a matter of statutory interpretation, when a statute fails to define a given term, that term should be given its precise and well settled legal meaning in the jurisprudence of the state. And it is presumed that in drafting the statute the Legislature understood and adopted that well-settled meaning. Moreover, effect and meaning should be given to the entire statute and every word part and word thereof. In that regard, courts should avoid a construction that renders words of the statute superfluous." People v. Perez, 73 Misc.3d171 (2021).
Here, because the defendant charges that since the People failed to submit an unredacted DV intake form for the complaining witness, the People have failed to meet their statutory requirements under CPL § 245.20(1)(c). However, the statute provides that the physical address of the complaining is not required for disclosure under CPL§ 245.20(1)(c). As such, the contact information provided in the People's Addendum to the Notice and Disclosure Form, dated March 1, 2024, is adequate contact information for the complaining witness.
Further, the court disagrees with the defendant that the People should have sought a protective Order from the court prior to disclosure. "Although a protective order may be sought with respect to 'materials claimed to be non-discoverable' (CPL § 245.10 [1] [a]), the availability of a protective order does not mean that the universe of "non-discoverable" materials is coextensive with those for which a protective order may issue." People V. Gonzales, NY Slip Op 50924 (2020). This court finds that the protective Order "is for material that relates to the subject matter of the case. CPL § 245.20 [1]." In Gonzalez, the court found that a Protective Order is necessary when the items are related to the subject matter of the case but due to competing concerns, must be withheld or disclosure is restricted. The use of protective order, that court states, does not "extend to materials that are not related to the subject matter of the case." Id. At 5.
Here, as the physical address is not required by the statute, the court finds that a protective order is unnecessary as there are no competing concerns on information that is related "to the subject matter of the case" and thus discoverable. The statute is clear that the physical address is not required to be disclosed. Further, as the People have disclosed the defendant's gang affiliation in other discovery, the court finds that 
specific circumstances here are sufficient to find that the People have complied with their statutory requirements.
BWC Metadata and Audit Trails
"Audit trails of body camera footage fall within the category of "system metadata," which "reflects automatically generated information about the creation or revision of a document . . . or the date and time of its creation or modification." People v. Larkin, 72 Misc 3d 663 (2021) citing Matter of Irwin v Onondaga County Resource Recovery Agency, 72 AD3d 314 [4th Dept [*5]2010]. Audit trails are "a form of system metadata that is electronically stored information (ESI) that describes the history, tracking and management of an electronic document" and includes the "hidden text, formatting, codes, formulae, and other information associated" with an electronic document." Vargas v. Lee, 2015 NY Misc. LEXIS 2176. There audit trails contain data such as volume adjustment, logs of who viewed the footage, battery life of the camera and other highly technical and non-personal information. In Larkin, the court found that: 
"The audit trail of body camera footage offers no additional information regarding the subject matter of the criminal case—a consideration that strongly militates against mandating the automatic disclosure thereof. Moreover, there is little reason to believe that the audit trail is necessary for authentication purposes; when and by whom the body camera footage was recorded is not in question and the video is time and date stamped. Therefore, absent a particularized showing that the audit trail is likely to contain information that is relevant to the crime(s) charged which cannot be ascertained from the footage itself, it is not discoverable." Id at 667 and 668.
The court finds that the authenticity of the body worn camera footage is not at issue here, and for the purposes of CPL § 245.20 (1), the People have satisfied their mandatory discovery obligations by providing the defense with the body worn camera footage and the metadata sheets. The metadata contained in the audit trails does not contain any information that would be relevant to the crime charged and is therefore not automatically discoverable. Even under the statute's "catch all" meaning, these items would not relate to "the subject matter of the case" for its lack of identifiable information on its own as authenticity of the footage is not at issue here. 
Roll Call logs and Prisoner Holder Pen Roster
Neither the defendant or the People assert relevant case law as to the discoverability of the Roll Call Logs and the Prisoner Holder Pen Roster and instead assert opposite conclusions. The Roll Call Logs are attendance sheets generated by the precinct to show what officers were working at any given time. The Prisoner Holder Pen Roster is a list of all the prisoners that were logged at the precinct at any given time and includes their names, arrest numbers and personal identifying information. Absent of a cogent argument as to why these items relate to the subject matter of the case, the People are not required to automatically disclose these items as they are not at issue and do not relate to "the subject matter in this case."
Recidivist Tracking and Reporting Database (RTRD) which is included as an attachment to the DD5s
Recidivist Tracking and Reporting Database (RTRD), tracks the personal information and prior arrests of suspects and defendants. People v Lustig, 68 Misc 3d 234, 239 [Sup Ct, Queens County 2020]). The People assert that the information contain in the RTRD is duplicative in previously exchanged discovery disclosed to the defendant, namely the Prisoner Pedigree Form, Prisoner Movement Slip, Defendant's Rap Sheet etc. The People also then contend that the information contained therein does not relate "to the subject matter of the case." The court finds that this information cannot be both. The information gleaned from the database can either "relate to the subject matter of the case" and is thus duplicative in already exchanged discovery or it does not relate "to the subject matter of the case." NY CLS CPL § 245.20 (3) [*6]mandates that supplemental discovery shall be disclosed to the defendant a list of all misconduct and criminal acts of the defendant not charged in the indictment, superior court information, prosecutor's information, information, or simplified information, which the prosecution intends to use at trial for purposes of (a) impeaching the credibility of the defendant, or (b) as substantive proof of any material issue in the case.
The court in Lustig found that RTRD was used by the NYPD as investigative tools to gather information about defendant. And, clearly, "the officers who ran these searches thought they had the potential to yield information that would enhance their investigation . . . " Id at 472, 473.
Here, regardless of whether the information is duplicative in any of the discovery and in the spirit of the statute which requires openness in disclosures, the court finds that the People are ORDERED to disclose this supplemental information and serve defendant with a SCOC explaining the reason for the supplemental disclosure and certifying their compliance pursuant to CPL § 245.50 (1).
Recent Unredacted CCRB MOS
The defendant contends that the People's failure to disclose recent unredacted CCRB MOS Officer History Reports for Detective Gloria Nelson, Detective Ashley Gonzalez, Detective Carl Diaquoi, Sergeant Thomas Little, PO Rayshawn Ellison, PO Jamal Moye, and PO Juan Garcia Mendezare should invalidate the People's COC and SOR. The People contend that his information is not discoverable because the officers are not potential witnesses.
CPL § 245.20 (k)(iv) states in pertinent part that "The prosecution shall disclose . . . all evidence and information . . . [to] impeach the credibility of a testifying prosecution witness." Further Giglio materials are automatically discoverable under CPL § 245.20 (k)(iv) as they relate to a testifying witness. As there are no arguments advanced by the defendants as to why they would be entitled to the records of Detective Gloria Nelson, Detective Ashley Gonzalez, Detective Carl Diaquoi, Sergeant Thomas Little, PO Rayshawn Ellison, PO Jamal Moye, and PO Juan Garcia Mendezare, the court declines the defendant's request to hold the People's COC and SOR invalid for failure to disclose these records.
ECMS Access Logs
The court declines to consider the ECMS Access Logs as the People have stated that these records do not exist.
Confirmatory ID Text
While the court finds that the belated disclosures of the confirmatory ID text, disclosed by the People to the defendant on April 17, 2024, does not invalidate the COC and SOR due to the inadvertent error of the People to timely disclose these materials. An "inadvertent error of the People to timely disclose this information does not warrant the invalidating of the People's COC and SOR." People v. Moore, 149 N.Y.S.3d 884 (2021). Because the facts here do not suggest that the untimely disclosure was nothing more than an inadvertent error and not intent to act in bad faith, this court declines to invalidate the People's COC and SOR on these grounds.

Conclusion
As such, the defendant's motion to deem the prosecution's Certificate of Compliance invalid because the prosecution did not fulfill its initial discovery obligations under C.P.L. § [*7]245.20(1); (2) Dismissing the accusatory instrument (C.P.L. § § 30.30, § 170.30 (1)(e), 245.20(1) is hereby DENIED.
Further, the People are ORDERED to disclose the Defendant's Recidivist Tracking and Reporting Database (RTRD) and serve defendant with a SCOC explaining the reason for the supplemental disclosure and certifying their compliance pursuant to CPL § 245.50 (1) within 15 days of the date of this Decision and Order.
This constitutes the Decision and Order of the Court.
Dated: September 30, 2024
ENTER:
HON. SHARON A. BOURNE-CLARKE, J.S.C.