People v Urena (2025 NY Slip Op 50134(U))

[*1]

People v Urena

2025 NY Slip Op 50134(U)

Decided on February 7, 2025

Criminal Court Of The City Of New York, Bronx County

Powell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 7, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Amaury Urena, Defendant.

Indictment No. 70083-24

Amaury Urena, pro se, Jessie Hoberman-Kelly, Esq., legal advisor 
Darcel D. Clark, District Attorney (Joseph Saputo of counsel) for the People

Verena C. Powell, J.

Recitation of the papers considered in reviewing the underlying CPL 245.50 (4) motion include:
Papers Numbered
Defendant's Motion to Challenge Certificate of Compliance, October 11, 2024, affirm. 1
People's Affirmation in Opposition, December 18, 2024, ADA Joseph Saputo, 2
Office of the District Attorney, Bronx County, affirm.
People's Amended Affirmation in Opposition, December 19, 2024,
ADA Joseph Saputo, Office of the District Attorney, Bronx County, affirm. 3
Defendant's Affirmation in Reply to People's Affirmation in Opposition,
January 13, 2025. 4
Defendant Amaury Urena is charged with robbery in the first degree (Penal Law § 160.15 [3]), which is a class B violent felony offense, and other related charges. Defendant pleaded not guilty at his arraignment on January 11, 2024, to indictment No. 70083-24. Defendant now challenges the People's certificate of compliance and moves for release from pretrial detention pursuant to Criminal Procedure Law 30.30 (2) (a). The People filed a response in which they opposed his motion and reiterated their readiness, and defendant filed a reply reasserting his claims. For the reasons stated herein, defendant's motion to invalidate the People's certificate of compliance and to seek release from custody is DENIED.
This case began when defendant allegedly robbed two individuals at an automobile repair shop at gunpoint and stole a wallet from them on December 12, 2023. Afterward, defendant fled the scene and led over forty law enforcement officers—including patrol officers from the New York City Police Department (NYPD), personnel from the NYPD Aviation Unit, and deputy sheriffs from the New York City Sheriff's Office—on a chase that eventually ended in [*2]defendant's arrest. During the chase, defendant had fled through the grounds of St. Barnabas Hospital and disposed of the stolen wallet.
For Urena's involvement in this incident, he was arraigned in the Criminal Court of the City of New York, Bronx County, on December 14, 2023. A grand jury voted to indict him on December 21, 2023. Urena was arraigned on indictment No. 70083-24 in Supreme Court, Criminal Term, on January 11, 2024. On that date, the court set a motion schedule for defendant's omnibus motion.
At the next court appearance on March 22, 2024, defendant had not filed any motions. Instead, defendant made an oral application for release pursuant to CPL 30.30 (2) (a). The court denied defendant's application for release and adjourned the matter for trial.
Defendant continued to seek pretrial release and applied for a writ of habeas corpus on April 18, 2024, to the Appellate Division, First Department. The People filed a response on May 23, 2024. The Appellate Division granted the petition by transferring the proceeding to the Supreme Court, Criminal Term, on October 17, 2024. Upon transfer of the proceeding, a different judge rendered an oral decision dismissing the writ on December 3, 2024.
While the habeas petition was pending, the People filed a certificate of compliance on May 22, 2024. According to the certificate of compliance, the People disclosed to defendant over 130 discoverable items, including body-worn camera footage and memo books from 46 police officers, over 100 surveillance video files, 911 calls, radio runs, and several DD5 reports.
Defendant alleges several defects in discovery, including the body-worn camera footage of several police officers, the names and contact information of civilian witnesses, metadata for the body-worn camera footage, security records from St. Barnabas Hospital, impeachment information, and Molineux information.
I
In this motion, defendant moves for release from custody under CPL 30.30 (2) (a), asserting that the People's certificate of compliance is invalid, and that the People have exceeded the relevant statutory period.
An incarcerated defendant awaiting trial on a felony case is entitled to release on bail or recognizance if the People are not ready for trial within "ninety days from the commencement of his or her commitment to the custody of the sheriff" (CPL 30.30 [2] [a]). To be ready for trial, "there must be a communication of readiness by the People which appears on the trial court's record" and "the prosecutor must make his statement of readiness when the People are in fact ready to proceed" (People v Kendzia, 64 NY2d 331, 337 [1985]). In addition, the People must certify compliance with their discovery obligations (CPL 30.30 [5] ["Any statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of section 245.20 of this chapter . . . ."]; CPL 245.50 [3] ["[T]he prosecution shall not be deemed ready for trial for purposes of section 30.30 of this chapter until it has filed a proper certificate pursuant to subdivision one of this section"]).
As part of their discovery obligations, the People must give to defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (CPL 245.20 [1] [describing automatic discovery]). After the People have provided all required discovery, excluding items subject to a protective order or items that have been lost or destroyed, the People may certify compliance with their discovery obligations by filing a certificate of compliance (see CPL 245.50 [1] [describing certificates of compliance]).
However, if the People fail to file a proper certificate of compliance, they cannot be deemed ready for trial (CPL 245.50 [3]). And if the People are not ready for trial within the required period, then defendant may move for dismissal (CPL 30.30 [1]) or release from pretrial incarceration (CPL 30.30 [2]). In this way, "[t]he legislature tethered the People's CPL article 245 discovery obligations to CPL 30.30's speedy trial requirements" (People v Bay, 41 NY3d 200, 209 [2023]).
The validity of a certificate of compliance is thus critically important for determining whether the People are indeed ready for trial. As a threshold matter, the potential deficiencies in the certificate of compliance must consist of materials subject to automatic discovery (see CPL 245.50 [1]). However, some of the materials that defendant sought are not subject to automatic discovery, namely, the body-worn camera metadata and St. Barnabas security records.
Defendant asserts that the People did not disclose audit trails and other metadata for law enforcement officers' body-worn camera footage. However, the metadata associated with the body-worn camera footage is not subject to the People's automatic disclosure requirements (see People v Rodriguez, 84 Misc 3d 685, 690 [Sup Ct, Kings County 2024] [holding that audit trails and other metadata created by police body-worn cameras do not constitute automatically discoverable material]; People v McMillian, 84 Misc 3d 1211[A], 2024 NY Slip Op 51413[U], *4 [Sup Ct, Kings County 2024] ["The metadata contained in the audit trails does not contain any information that would be relevant to the crime charged and is therefore not automatically discoverable"]). Such metadata does not relate to the subject matter of the case. The phrase "relate to the subject matter of the case" is crucial qualifying language that limits the People's discovery obligations (CPL 245.20 [1]). Absent an articulable reason to show that metadata is relevant to the subject matter of the case, such metadata, including audit trails, do not fall within automatic discovery (see Rodriguez at 690). If defendant seeks disclosure of said metadata, then defendant must articulate how these materials are relevant (see CPL 245.30 [3] [describing discretionary discovery where the court may, "upon a showing by the defendant that the request is reasonable . . . order the prosecution . . . to make available for disclosure to the defendant any material or information which relates to the subject matter of the case"]).
The St. Barnabas security records are also not subject to automatic discovery. The records of St. Barnabas Hospital were not within the actual or constructive possession of the People when they filed their certificate of compliance. Such material must be "in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" to constitute automatic discovery (CPL 245.20 [1]). Thus, the People did not have to disclose security records that were not in their possession before certifying compliance with their discovery obligations.
When evaluating the discovery that had not been provided prior to certification, the "People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial [certificate of compliance] despite a belated or missing disclosure" (Bay at 213). In determining whether the People exercised due diligence, a court should consider "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id. at 212). Thus, a court must engage in "holistic assessment of the People's efforts to comply . . . rather than a strict item-by-item test [*3]that would require us to conclude that a [certificate of compliance] is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]).
Because a court must engage in a holistic evaluation, a belated disclosure does not necessarily invalidate a certificate of compliance (see People v Macaluso, 230 AD3d 1158 [2d Dept 2024] [finding that certificate of compliance was proper where the People acted "in good faith and with due diligence" and the belated disclosures "were minimal, insignificant, and voluntarily provided to the defense once the People were made aware of the existence of the undisclosed material"]).
Here, the record demonstrates that the People "exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery" (CPL 245.50 [1]).
As for body-worn camera footage, the People provided body-worn camera footage from 46 police officers. The People disclosed some video clips later. The People disclosed a portion of Police Officer Flores' body-worn camera footage later because the additional videos were not identified by the same arrest number and was recorded almost an hour after the incident captured by the remaining video clips. Because of "the voluminous discovery actually produced, it would not have been particularly obvious to the People at the time of the initial [certificate of compliance] that some of the requested [body-worn camera] footage was missing" (People v Lawrence, 231 AD3d 1497, 1500 [4th Dept 2024]). The People's explanation for the lapse in discovery and the prompt disclosure of said discovery afterward "support the conclusion that the People exercised due diligence with respect to the missing [body-worn camera] footage" (id. at 1500).
Body-worn camera footage from Police Officers Nieves, Tovarminaya, Barthelemy, Lee, and Maciascevallos was later disclosed even though the People believed they had previously turned over the footage before May 22, 2024. Defendant expressed, through his legal advisor, that he had not received all discovery as of May 29, 2024. When the People asked about said discovery at a court appearance on June 7, 2024, defendant did not explain nor confer with the People. The discovery provisions of CPL article 245 "w[ere] not meant to encourage gamesmanship by defendants seeking to create 'an inescapable trap for the diligent prosecutor who professionally, assiduously and in good faith attempts to comply' with their new procedures" (People v Godfred, 77 Misc 3d 1119, 1124 [Sup Ct, Bronx County 2022], quoting People v Erby, 68 Misc 3d 625, 633 [Sup Ct, Bronx County 2020]). After defendant's legal advisor told the People on June 10, 2024, that certain body-worn camera footage was missing, the People responded by resharing all body-worn camera footage on June 20, 2024. The People acted diligently and in good faith by promptly responding to defendant's discovery issues once they were aware of the deficiencies (see People v Drayton, 231 AD3d 1057, 1060 [2d Dept 2024] [finding that the People exercised due diligence before filing certificate of compliance despite belated disclosure of grand jury minutes where the People acknowledged that matter was presented to grand jury, that no minutes were available yet, and "the People disclosed the transcript within a reasonable time after obtaining it from the court reporter"]).
As for impeachment evidence of potential witnesses, such information constitutes automatically discoverable material (CPL 245.20 [1] [k] [stating that the People must disclose information favorable to defendant]). The People turned over all such information. Because Deputy Sheriff Torres has no previous misconduct allegations, there was no further impeachment evidence to disclose.
As for the names and contact information of certain civilian witnesses, such information constitutes automatic discovery (see CPL 245.20 [1] [c]). However, this provision has specific limiting language: "The names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged . . ." (id. [emphasis added]). Here, the People emailed defendant's legal advisor with a civilian witness disclosure letter per protective order on May 22, 2024. Later, on September 5, 2024, the People learned of two additional civilian witnesses who were at the automobile repair shop on the night of the alleged robbery. The next day, the People disclosed the relevant information for these witnesses to defendant's legal advisor. The People thus disclosed updated civilian witness information "within a reasonable time after obtaining it" (Drayton at 1060). Moreover, such witness information was not automatically discoverable because the prosecutor did not know such witnesses to have evidence (see CPL 245.20 [1] [c]).
As for Molineux information, the People must disclose "a list of all misconduct and criminal acts of the defendant not charged in the indictment . . . which the prosecution intends to use at trial for purposes of (a) impeaching the credibility of the defendant, or (b) as substantive proof of any material issue in the case" (CPL 245.20 [3]). Because the People provided defendant with a copy of his New York State criminal history record, i.e., his rap sheet, at his arraignment, the People have satisfied their supplemental discovery obligations under to CPL 245.20 (3).
Based on the People's diligent efforts before filing the certificate of compliance and the People's good-faith efforts to respond to any alleged deficiencies after certifying compliance, this court finds that the People's certificate of compliance filed on May 22, 2024, is valid and proper.
II
New York addresses statutory speedy trial in Criminal Procedure Law section 30.30. Section 30.30 (1) (a) requires the People to be ready for trial within six months of the commencement of a criminal action where the defendant is accused of one or more offenses, at least one of which is a felony. If the People are not ready for trial within that time, the defendant may seek either dismissal of the accusatory instrument, CPL 30.30 (1) or release from custody pending trial, CPL 30.30 (2) if ninety days or more of time is chargeable against the People. Here, the criminal action commenced with the filing of the initial accusatory instrument, the criminal court complaint, on December 14, 2023 (CPL 1.20 [17]; People v Porch, 212 AD2d 360 [1st Dept 1995]). The People have 182 days to proceed to trial on this matter (CPL 30.30 [1] [a]). 
Defendant, arraigned on the criminal court complaint on December 14, 2023, entered a plea of not guilty. The court set bail of $100,000.00 cash, $300,000.00 insurance company bond, and $300,000.00 at 10%, partially secured surety bond. The matter was adjourned to January 5, 2025, Part FA for grand jury action. 
On January 5, 2024, the grand jury handed up an indictment. The court transferred the matter to Supreme Court for arraignment on January 11, 2024. The People concede that the period from December 14, 2023, to January 11, 2024, is chargeable to the People (People v Correa, 77 NY2d 930 [1991]). Twenty-eight days of prereadiness delay transpired.
Urena was arraigned on the indictment at the January 11, 2024 court appearance. The court set a motion schedule. Defense motions were to be filed by February 9, 2024. The matter was adjourned to March 22, 2024. The period from January 11, 2024, through March 22, 2024, [*4]constitutes excludable time (CPL 30.30 [4] [a] [excluding "a reasonable period of delay resulting from other proceedings concerning the defendant"]).
Defendant, proceeding pro se, did not file motions by February 9, 2024, or the return day of March 22, 2024. On March 22, 2024, Urena made an oral application for 30.30 (2) (a) release. The court denied the motion. Urena stated he did not want to file motions but wanted to proceed directly to trial. Accordingly, the court adjourned the matter for trial on May 3, 2024.
Although defendant decided not to file a motion during this time, the case could not have been tried while the motion was pending (see People v Reed, 19 AD3d 312, 314 [1st Dept 2005] [excluding delay where "the purpose of this post-readiness adjournment was for defendant to file a pre-trial omnibus motion"]; People v Wellington, 254 AD2d 21, 22 [1st Dept 1998] [excluding delay for motion practice "where the case could not proceed until the motion was decided"]). Further, "the People could not begin the trial while the defendant's pre-trial omnibus motion was sub judice . . . ." (People v Douglas, 209 AD2d 161, 162 [1st Dept 1994]).
From March 22, 2024, through May 3, 2024, the People are charged with only 27 days of prereadiness delay. More specifically, the People are charged with 27 days of prereadiness delay from March 22, 2024, through April 18, 2024. At the court appearance on March 22, 2024, defendant expressed his readiness for trial. The People concede the period from March 22, 2024, through April 18, 2024, as a chargeable delay.
On April 18, 2024, defendant applied for a writ of habeas corpus. On December 3, 2024, the court dismissed the habeas petition. The period from April 18, 2024, through December 3, 2024, thus constitutes excludable time (CPL 30.30 [4] [a] [excluding "a reasonable period of delay resulting from other proceedings concerning the defendant"]; see People v Hodges, 12 AD3d 527, 528 [2d Dept 2004] [excluding delay resulting from litigation of collateral proceedings]).
From May 3, 2024, through May 17, 2024, the People are charged with 0 days of prereadiness delay. At the court appearance on May 3, 2024, the court denied defendant's bail application. The habeas petition was still pending at this time. The period from May 3, 2024, through May 17, 2024, thus constitutes excludable time because defendant's habeas petition was still under consideration by the court (CPL 30.30 [4] [a]; see People v Hodges at 528). Further, the period from May 11, 2024, through May 17, 2024, constitutes excludable time because the People applied for a protective order on May 11, 2024, that was not signed until May 17, 2024 (CPL 30.30 [4] [a]; see People v Varuzzi, 179 Misc 2d 716, 721 [Sup Ct, Queens County 1999] [excluding delay which resulted after the People filed motion for protective order]).
From May 17, 2024, through June 7, 2024, the People are charged with 0 days of prereadiness delay and 0 days of postreadiness delay. At the court appearance on May 17, 2024, defendant's habeas petition was still pending. The period from May 17, 2024, through June 7, 2024, thus constitutes excludable time because defendant's habeas petition was still under consideration by the court (CPL 30.30 [4] [a]; see People v Hodges at 528). Further, on May 22, 2024, the People filed a certificate of compliance and statement of readiness, which tolled the readiness period (see People v Stirrup, 91 NY2d 434, 440 [1998] [holding that the filing of an off-calendar statement of readiness "serves to toll the 'speedy trial clock' from running for the remainder of that adjournment period"]).
From June 7, 2024, through June 24, 2024, the People are charged with 0 days of postreadiness delay. On June 7, 2024, defendant moved to challenge the People's certificate of compliance. On June 24, 2024, the court denied defendant's motion in its entirety. The period [*5]from June 7, 2024, through June 24, 2024, thus constitutes excludable time (CPL 30.30 [4] [a] [excluding "a reasonable period of delay resulting from other proceedings concerning the defendant"]; see People v Scaringe, 137 AD3d 1409, 1411 [3d Dept 2016] [holding that "[d]elay resulting from a court's consideration of pretrial motions is not chargeable to the People"]).
From June 24, 2024, through August 19, 2024, the People are charged with 0 days of postreadiness delay. At the court appearance on June 24, 2024, defendant's habeas petition was still pending. The period from June 24, 2024, through June 7, 2024, thus constitutes excludable time because defendant's habeas petition was still under consideration by the court (CPL 30.30 [4] [a]; see People v Hodges at 528). Further, on June 24, 2024, the court adjourned the case to August 19, 2024, for a conference to determine an available trial date (see People v Rivera, 223 AD2d 476, 476 [1st Dept 1996] [holding that "where, as here, the People have already announced their readiness for trial, the period of delay due to the unavailability of the court is not chargeable to the People"]).
From August 19, 2024, through September 9, 2024, the People are charged with 0 days of postreadiness delay. At the court appearance on August 19, 2024, the People maintained readiness for trial. Also, defendant's habeas petition was still pending. The period from August 19, 2024, through September 9, 2024, thus constitutes excludable time because defendant's habeas petition was still under consideration by the court (CPL 30.30 [4] [a]; see People v Hodges at 528). Moreover, defendant concedes that the adjournment period following August 19, 2024, is not chargeable to the People.
From September 9, 2024, through October 11, 2024, the People are charged with 0 days of postreadiness delay. At the court appearance on September 9, 2024, the Department of Correction did not produce defendant because he did not consent to be searched. Also, defendant's habeas petition was still pending. The period from August 19, 2024, through September 9, 2024, thus constitutes excludable time because defendant's habeas petition was still under consideration by the court (CPL 30.30 [4] [a]; see People v Hodges at 528). Moreover, defendant concedes that the adjournment period following September 9, 2024, as the time that should not be charged to the People.
All told, the People have expended 55 days of chargeable time to prosecute this case. As the People have not exceeded 90 days to prepare for trial, defendant's motion for release under CPL 30.30 (2) (a) is DENIED.
This decision constitutes the order of this court.
Dated: February 7, 2025
Bronx, New York
HON. VERENA C. POWELL, A.J.S.C.